STATE OF NORTH CAROLINA v. DONALD REX BROGDEN

No. 412A88

(Filed 14 August 1991)

1. **Criminal Law § 686 (NCI4th); Constitutional Law § 342 (NCI4th) — jury instructions — informal meeting in chambers improper — error not prejudicial**

The trial court's error in a capital case in conducting an informal meeting in chambers to discuss the jury instructions, outside the presence of defendant, prior to the formal charge conference held in open court, was harmless beyond a reasonable doubt where, after the informal meeting was held, the entire matter was entered into the record in open court, in the presence of defendant, where both counsel for the State and for defendant made their legal arguments and took exceptions.

**Am Jur 2d, Criminal Law § 916.**

**Exclusion or absence of defendant, pending trial of criminal case, from courtroom, or from conference between court and attorneys, during argument on question of law. 85 ALR2d 1111.**

STATE v. BROGDEN

[329 N.C. 534 (1991)]

2. **Homicide § 25.2 (NCI3d)— premeditation and deliberation— sufficiency of evidence**

There was no merit to defendant's contention that the evidence did not reasonably support the conclusions that "lethal blows were struck after the victim was felled and rendered helpless" or that "grossly excessive force" was used, and the trial court therefore did not commit reversible error by permitting the jury to find premeditation and deliberation, where the physical evidence suggested that the lethal blow came after the victim had been shot twice previously and was on the floor of the store; defendant's wife testified that there was a "pause" between shots; and three shots fired at close range, the last while the victim lay helpless on the floor, would support a finding of use of grossly excessive force.

**Am Jur 2d, Homicide § 439.**

3. **Robbery § 4.3 (NCI3d)— robbery with dangerous weapon— sufficiency of evidence**

Evidence was sufficient to be submitted to the jury in a prosecution for robbery with a dangerous weapon where it tended to show that neither defendant nor his wife was employed at the time of the crime; defendant had paid only part of his rent prior to the murder, but on the day after the murder paid the balance due in five, ten, and twenty dollar bills; approximately one hour before deceased's body was found in his store there was about $200 in currency in the cash drawer; when his body was discovered the cash drawer was open, but it contained less than twenty dollars; and deceased had been shot three times by the defendant.

**Am Jur 2d, Robbery § 62.**

4. **Jury § 7.4 (NCI3d)— race of jurors—failure to establish—no showing of discrimination**

By failing to elicit from the jurors by means of questioning or other proper evidence the race of each juror, defendant failed to carry his burden of establishing an adequate record for appellate review with regard to his claim of discrimination in the exercise of peremptory challenges.

**Am Jur 2d, Jury § 217.**

**5. Jury § 7.14 (NCI3d) — jurors hesitant about capital punishment — peremptory challenges allowable**

The trial court did not err in allowing the district attorney to peremptorily challenge certain jurors solely because they were "hesitant" about imposing capital punishment.

**Am Jur 2d, Jury §§ 237, 289, 290.**

**Comment Note: Beliefs regarding capital punishment as disqualifying juror in capital case — post Witherspoon cases. 39 ALR3d 550.**

**6. Criminal Law § 775 (NCI4th) — voluntary intoxication — request for instruction properly denied**

The trial court properly denied defendant's request for an instruction on voluntary intoxication where the record showed that defendant was able to drive a car, fire the murder weapon, hit the victim with all three shots, recognize the gravity of what he had done, and flee the scene; and the evidence thus did not satisfy defendant's burden of proving that he was so completely intoxicated as to render him incapable of forming a deliberated and premeditated purpose to kill.

**Am Jur 2d, Criminal Law § 54; Homicide §§ 127-130.**

**Modern status of the rules as to voluntary intoxication as defense to criminal charge. 8 ALR3d 1236.**

**7. Criminal Law §§ 434, 439, 463 (NCI4th) — jury argument — no gross impropriety**

Five statements made by the district attorney during his closing argument with regard to the credibility of defendant's wife, the order in which the fatal shots were fired, defendant's failure to refute ballistics testimony, defendant's prior criminal record, and defendant's robbery of the victim because he had no source of income did not rise to the level of gross impropriety which would have warranted intervention *ex mero motu* by the trial court.

**Am Jur 2d, Trial §§ 218, 244, 269.**

**8. Criminal Law § 1352 (NCI4th) — mitigating circumstances — unanimous finding required — prejudicial error**

The trial court erred in requiring that the jury unanimously find mitigating circumstances, and the court's oral modi-

fication of the written instructions was insufficient to correct the error; furthermore, such error was prejudicial where the jury failed unanimously to find any of the mitigating circumstances submitted; there was evidence sufficient to support the mitigating circumstance that defendant was under the influence of mental or emotional disturbance when the murder was committed; and this circumstance was statutory and therefore presumed to have mitigating value.

**Am Jur 2d, Criminal Law § 628.**

**Unanimity as to punishment in criminal case where jury can recommend lesser penalty. 1 ALR3d 1461.**

APPEAL as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by *Stevens (Henry L., III)*, *J.*, at the 8 August 1988 Criminal Session of Superior Court, DUPLIN County. Defendant's motion to bypass the Court of Appeals as to his conviction of robbery with a dangerous weapon was allowed by this Court on 15 February 1990. Heard in the Supreme Court 8 May 1991.

*Lacy H. Thornburg, Attorney General, by John H. Watters, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, for defendant-appellant.*

MEYER, Justice.

Defendant was indicted for the murder of John Robert Walker and was tried capitally at the 8 August 1988 Criminal Session of Superior Court, Duplin County. The jury found defendant guilty of first-degree murder on the theories of premeditation and deliberation and felony murder and guilty of robbery with a dangerous weapon. Following a sentencing proceeding pursuant to N.C.G.S. § 15A-2000, the jury recommended a sentence of death for the murder conviction, and on 24 August 1988, the trial court sentenced defendant to death in accordance with the jury's recommendation. Defendant was also sentenced to a consecutive term of forty years for robbery with a dangerous weapon.

Defendant brings forward numerous assignments of error relating to the guilt and sentencing phases of his trial. After a careful consideration of these assignments, as well as the transcript,

record, briefs, and oral argument, we find no error in the guilt phase of defendant's trial. The decision of the United States Supreme Court in *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369, *on remand*, 327 N.C. 31, 394 S.E.2d 426 (1990), requires that we remand for a new sentencing hearing.

The evidence presented by the State at trial tended to show that on 7 March 1988, John Robert Walker owned and operated a country store in rural Duplin County. That afternoon, about 2:00 p.m., Dennis Davis, a salesman who stopped in at the store on his route every other Monday, entered the store and noticed the cash register open but saw no one. He called for Mr. Walker six or seven times and then went outside and called again. He looked through the window and saw Walker's body on the floor at the end of the counter. Davis then drove a short distance to find an area resident to call the police. Upon returning to the store, Davis determined that Mr. Walker was dead.

Police officers arrived and noted that there was a trail of blood behind the counter leading to the body and that there were visible wounds on the right side of the body, on the left cheek, and in the area of his left shirt pocket. Mrs. Walker testified that approximately $200.00 was missing from the cash box. Two lead slugs were found at the scene, and another was recovered from Walker's body during an autopsy. Medical evidence revealed that the death resulted from the bullet which caused the wound in the cheek and then followed a path downward from left to right, lacerating the carotid artery, causing Walker to bleed to death internally.

Defendant and his wife were married in 1987. They had lived in Alabama for some time, but then moved to North Carolina where they stayed with defendant's mother. Later, they moved into a mobile home in Princeton, Johnston County, where the rent was $250.00, due on the first of each month. In January and February of 1988, defendant bought two guns from a firearms store and routinely carried one of the guns with him in a shoulder holster or in his pants. Defendant's wife even took a photograph of defendant wearing a pistol in a shoulder holster, which was later identified as appearing to be the murder weapon. During this time, neither defendant nor his wife was employed. Defendant and his wife had no income, and defendant had been drinking heavily seven

days a week. By 7 March, defendant had only paid $100.00 toward the rent due for March.

On 7 March 1988, defendant started drinking early that morning. He and his wife decided to drive to visit his mother but did not stop at her house because a strange car was in the driveway. Instead, they drove to a liquor store in the area and purchased some Beam's Choice for defendant and later got a six-pack of beer at a convenience store. They drove to the Beautancus area of Duplin County, past Walker's store, where defendant's aunt, Dora Bell, lived. They went to Mrs. Bell's house about 1:00 p.m. and rang the doorbell but left before she could answer the door. Defendant and his wife then went back to Walker's store and parked beside a telephone booth. Defendant's wife attempted to call defendant's mother but got a busy signal. She got back into the car and told defendant that she wanted a soft drink. Defendant and his wife entered the store together. He went to the back of the store, and she stayed around the "drink box."

About 1:45 p.m., John Watson, a state bridge maintenance worker, came into the store and made a purchase. He only stayed in the store a few minutes, but he did notice defendant and his wife inside the store. While in the store, defendant's wife got a soft drink, corn chips, and cookies. She approached the counter where Mr. Walker was standing and told him that defendant would pay for the food because her purse was in the car. She then went outside and heard three shots, each separated by a pause. Shortly thereafter, defendant came out of the store and told her, "[L]et's get out of here." Defendant was "white in the face" and appeared nervous. Defendant then drove back to Princeton. As he drove, defendant laid his gun on the front seat of the car. The gun appeared to be the gun later identified as the murder weapon. Defendant and his wife arrived back at the mobile home about 2:30 p.m.

The day after the murder, defendant paid his landlord the balance due on the rent in cash consisting of five-, ten-, and twenty-dollar bills. On 9 March, an S.B.I. agent searched defendant's mobile home and automobile and found two weapons. Officers testified that the two slugs found in the store and the one taken from Mr. Walker's body were fired from the revolver found under the mattress in defendant's bedroom.

Defendant presented evidence during the guilt phase that when he and his wife bought the weapons, one of the guns was for

his wife. She had taken the gun outside and, with the firearm dealer's help, test fired it while at the store. Another witness testified that he saw defendant's wife fire the weapon and that she could shoot as well as defendant.

Evidence presented at the sentencing phase will be discussed under Issue VIII as needed.

GUILT PHASE ISSUES

I.

[1] Defendant contends that the trial court erred in conducting a guilt phase charge conference in an informal, in-chambers meeting, outside the presence of defendant and the court reporter, prior to the formal charge conference held in open court. We disagree.

At the close of evidence at the guilt phase, an informal meeting between the trial judge and counsel for the State and defendant was conducted in chambers. There is no affirmative indication in the record whether defendant was present. The parties then returned to the courtroom, and the respective requests for jury instructions and possible verdicts were put into the record. At the conclusion of the formal charge conference in open court, the trial court asked the parties, on two separate occasions, whether there was anything the parties wanted to add to the record. After receiving a negative response after the first inquiry and no response after the second, the following discussion took place:

THE COURT: All right. Anything further?

MR. ANDREWS: No, sir.

MR. PHILLIPS: No, sir.

MR. SMITH: No, sir.

THE COURT: If there is anything further now, let's get it in the record. I want to be absolutely fair about this thing. If there is anything, let's get it in here.

All right. Mr. Court Reporter seems like everybody is satisfied with the charge with those exceptions which we have recorded.

Am I correct, Gentlemen?

MR. PHILLIPS: Yes, your Honor.

MR. SMITH: Yes, your Honor.

THE COURT: And the possible verdicts to be submitted to the jury. How say the State, Mr. Solicitor?

MR. ANDREWS: Your Honor, we contend those are the proper verdicts to be submitted.

THE COURT: I believe in that respect, I think the defendant agrees?

MR. PHILLIPS: Yes, sir.

MR. SMITH: Yes, sir.

THE COURT: That's it. Thank you, Gentlemen.

Counsel for each side had an opportunity to be heard concerning jury instructions and possible verdicts and to take exception to any ruling that was adverse to his position.

It is well settled that a defendant charged with capital murder "has the right to be, and must be, personally present at all times in the course of his trial, when anything is done or said affecting him as to the charge against him . . . , in any material respect." *State v. Kelly*, 97 N.C. 404, 405, 2 S.E. 185, 185-86 (1887). Article I, section 23 of the North Carolina Constitution guarantees a criminal defendant the right to be present at *every stage* of his trial. *State v. Huff*, 325 N.C. 1, 381 S.E.2d 635 (1989), *judgment vacated on other grounds*, --- U.S. ---, 111 L. Ed. 2d 777 (1990). Our state Constitution provides a broader right than the federal Constitution and mandates that a defendant's presence cannot be waived. *See State v. Payne*, 328 N.C. 377, 402 S.E.2d 582 (1991).

However, error caused by the absence of the defendant at some portion of his capital trial does not require automatic reversal. This Court has adopted the "harmless error" analysis in cases where a defendant is absent during a portion of his capital trial. *State v. Huff*, 325 N.C. 1, 381 S.E.2d 635. The State has the burden of establishing that the error was harmless beyond a reasonable doubt. *Id.; State v. Payne*, 328 N.C. 377, 402 S.E.2d 582.

This Court, under similar circumstances, found harmless error where a charge conference was held out of the presence of defendant and was not recorded, but where defendant was represented by counsel at the conference and the trial court subsequently reported the proposed instructions on the record and gave counsel an oppor-

tunity to be heard. *State v. Wise*, 326 N.C. 421, 390 S.E.2d 142 (defendant was charged with two counts of first-degree rape), *cert. denied*, --- U.S. ---, 112 L. Ed. 2d 113 (1990). In the capital case *sub judice*, an informal meeting was held in chambers with the attorneys to discuss the jury instructions. Then the entire matter was entered into the record in open court, in the presence of defendant, where both counsel for the State and for defendant made their legal arguments and took exceptions. We find that the error in conducting an informal meeting in chambers to discuss the jury instructions, outside the presence of defendant, prior to the formal charge conference held in open court, was harmless beyond a reasonable doubt.

## II.

[2]    Defendant next contends that the trial court committed reversible error by permitting the jury to find premeditation and deliberation on the basis of a theory not supported by the evidence. Defendant argues that the evidence did not reasonably support the conclusion that "lethal blows were struck after the victim was felled and rendered helpless" or that "grossly excessive force" was used. We disagree.

This Court has recognized that there might be more than one plausible explanation to any given set of facts. *State v. Griffin*, 288 N.C. 437, 219 S.E.2d 48 (1975), *judgment vacated on other grounds*, 428 U.S. 904, 49 L. Ed. 2d 1210 (1976). In *Griffin*, the defendant objected to the jury being instructed that it might consider lethal blows inflicted after the victim had been felled. The evidence in *Griffin* was that the victim had suffered two separate bullet wounds. This Court noted that "[c]ertainly one explanation of the bullet wound in the back of the head is that it was fired after the deceased was shot the first time [to the front of his neck] and had fallen to the ground." *Id.* at 447, 219 S.E.2d at 55.

Here, the victim, Mr. Walker, was found dead, lying at the end of the store counter, face down on his left side, in a pool of blood four or five feet in diameter. A blood trail behind the counter led from the cash register to where the body was found. Visible wounds to the body included gunshot wounds to Mr. Walker's left cheek, left shirt pocket, and left side just above the belt. Two spent bullets were found on the floor of the store. The third spent bullet was removed from the right neck or upper chest area during the autopsy of the body. The bullet had originally entered his

STATE v. BROGDEN

[329 N.C. 534 (1991)]

left cheek, then passed through the cheek tissue, through the cheek bone into the lower mouth, and down into the neck area after lacerating the carotid artery. The medical examiner testified that the path of the bullet was from Mr. Walker's left to his right side, downward and slightly back. The path of the bullet combined with the entrance wound in the left cheek and its resting place near the collarbone suggest that the lethal blow came after Mr. Walker had been shot twice previously and was on the floor of the store.

In addition to the State's presentation of physical evidence to support the "felled victim" theory, it is also supported by the testimony of defendant's wife that there was a "pause" between shots. *State v. Austin*, 320 N.C. 276, 295, 357 S.E.2d 641, 653 ("the 'felled victim' theory of premeditation and deliberation is that when numerous wounds are inflicted, the defendant has the opportunity to premeditate and deliberate from one shot to the next"), *cert. denied*, 484 U.S. 916, 98 L. Ed. 2d 224 (1987).

Defendant also alleges error in the trial court's instructions to the jury in that they could consider the "use of grossly excessive force" in determining whether defendant killed the victim with premeditation and deliberation. This Court has held that two shots at close range were sufficient to support consideration of the "use of grossly excessive force." *State v. Griffin*, 288 N.C. 437, 219 S.E.2d 430.

In the case *sub judice*, three shots were fired from a .38-caliber pistol, and all three shots struck the victim. The physical evidence indicates that one of the shots, the last and fatal one, was fired as Mr. Walker lay helpless on the ground. We find that the record contains plenary evidence from which a jury could properly find premeditation and deliberation beyond a reasonable doubt and hold that the trial court did not err in its instruction.

### III.

[3] Defendant next assigns error in the trial court's denial of his motion to dismiss, at the close of all the evidence, the charge of robbery with a dangerous weapon. We disagree. Defendant argues that the State offered no direct evidence that defendant took anything from Mr. Walker.

The motion to dismiss must be allowed unless there is substantial evidence of each element of the crime charged. *State v. Brown*,

310 N.C. 563, 313 S.E.2d 585 (1984). "Substantial evidence is evidence from which any rational trier of fact could find the fact to be proved beyond a reasonable doubt." *State v. Sumpter*, 318 N.C. 102, 108, 347 S.E.2d 396, 399 (1986). The evidence is to be considered in the light most favorable to the State, and the State is entitled to every reasonable inference. *State v. Earnhardt*, 307 N.C. 62, 296 S.E.2d 649 (1982).

In North Carolina, robbery with a dangerous weapon is the taking of personal property from another by the use or threatened use of a dangerous weapon whereby the life of a person is endangered or threatened. *State v. Porter*, 303 N.C. 680, 281 S.E.2d 377 (1981). Defendant alleges that the State failed in its proof on the element that personal property was taken. The record indicates that in March of 1988, neither defendant nor his wife was employed. Their rent of $250.00 was due on 1 March. By 7 March, defendant had paid only $100.00 toward the amount due. On 8 March, the day after the murder, defendant paid his landlord the remaining $150.00 in cash consisting of five-, ten- and twenty-dollar bills.

The wife of the deceased, Annie Walker, testified that the store always started the day with $60.00 in currency in the cash drawer. This amount would consist of twenty one-dollar bills, two tens, and four fives. On 7 March, Mrs. Walker worked at the store until approximately 1:00 p.m., and there was about $200.00 in currency in the drawer when she left. When Dennis Davis arrived at the store at 2:00 p.m. and found Mr. Walker's body on the floor, the cash drawer was open. The special agent that arrived at the store to process the crime scene found the cash drawer open, and the *only* money in the drawer was eight one-dollar bills and coins, for a total of $19.35.

We find that the evidence, when viewed in the light most favorable to the State, is sufficient to properly withstand defendant's motion to dismiss. We hold that the trial court did not err in denying defendant's motion to dismiss the charge of robbery with a dangerous weapon. This assignment of error is without merit.

## IV.

[4] Defendant further contends that the trial court erred in holding that the principles of *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69 (1986), did not apply to this case and that defendant had established a prima facie case of discrimination. We note that,

**STATE v. BROGDEN**

[329 N.C. 534 (1991)]

notwithstanding the trial court's ruling on whether defendant had standing to assert a *Batson* challenge, defendant has failed to provide an adequate record regarding the race of the jurors, both those accepted and those rejected, and has therefore waived any such objection.

This Court has previously made clear that

the burden is on a criminal defendant who alleges racial discrimination in the selection of the jury to establish an inference of purposeful discrimination. The defendant must provide the appellate court with an *adequate record* from which to determine whether jurors were improperly ·excused by peremptory challenges at trial. *Statements of counsel alone are insufficient to support a finding of discriminatory use of peremptory challenges.*

*State v. Mitchell*, 321 N.C. 650, 654, 375 S.E.2d 554, 556 (1988) (emphasis added) (citing *Jackson v. Housing Authority*, 321 N.C. 584, 585, 364 S.E.2d 416, 417 (1988)).

We have also previously stated:

Although [having the *court reporter* note the race of every potential juror] *might* have preserved a proper record from which an appellate court could determine if any potential jurors were challenged solely on the basis of race, we find it *inappropriate*. To have a court reporter note the race of every potential juror examined would require a reporter alone to make that determination without the benefit of questioning by counsel or any other evidence that might tend to establish the prospective juror's race. *The court reporter, however, is in no better position to determine the race of each prospective juror than the defendant, the court, or counsel.* An individual's race is not always easily discernible, and the potential for error by a court reporter acting alone is great. . . .

If a defendant in cases such as this believes a prospective juror to be of a particular race, he can bring this fact to the trial court's attention and ensure that it is made a part of the record. Further, if there is any question as to the prospective juror's race, *this issue should be resolved by the trial court based upon questioning of the juror or other proper evidence*, as opposed to leaving the issue to the court reporter who may not make counsel aware of the doubt. In the present

case the defendant did not avail himself of this opportunity
. . . .

. . . .

. . . Thus, the defendant has failed to demonstrate that
the prosecutor exercised peremptory challenges solely to remove
members of any particular race from the jury.

*Mitchell,* 321 N.C. at 655-56, 375 S.E.2d at 557-58 (emphasis added),
*quoted in State v. Payne,* 327 N.C. 194, 199, 394 S.E.2d 158, 160
(1990), *cert. denied,* --- U.S. ---, 112 L. Ed. 2d 1062 (1991).

We further held in *Payne* that an affidavit submitted by defense
counsel "contained only the perceptions of one of the defendant's
lawyers concerning the races of those excused—perceptions no more
adequate than the court reporter's or the clerk's would have been,
as we recognized in *Mitchell." State v. Payne,* 327 N.C. at 200,
394 S.E.2d at 161.

In the case *sub judice,* defendant's discussion with the court
regarding record keeping of each juror's race, the following ex-
change ensued:

[DEFENSE COUNSEL:] . . . The jury proceedings are being
transcribed by the reported [sic]. We simply [ask to] be allowed
to place in the record as far as the State's pre-emptory [sic]
challenges that is to race and sex of each of the jurors that
were pre-emptory [sic] challenges.

COURT: I have no problem with that. . . .

. . . .

COURT: . . . [T]he Court has no problem with the nose
count as it were as to the sex and to the race of the particular
jury [sic] which has been excused pre-emptory [sic] by the
State of North Carolina.

In spite of the foregoing exchange, however, the only records of
the potential jurors' race preserved for appellate review are the
subjective impressions of defendant's counsel and notations made
by the court reporter of her subjective impressions with regard
to race. We conclude that defendant, in failing to elicit from the
jurors by means of questioning or other proper evidence the race
of each juror, has failed to carry his burden of establishing an
adequate record for appellate review.

STATE v. BROGDEN

[329 N.C. 534 (1991)]

V.

[5]   As defendant's next assignment of error, he contends that the trial court erred in allowing the district attorney to peremptorily challenge certain jurors solely because they were "hesitant" about imposing capital punishment. The district attorney volunteered that he had peremptorily challenged six jurors solely because they were hesitant about the death penalty and had challenged two others in part because they were hesitant about imposing the death penalty. Defendant's assignment of error is without merit.

This Court has previously rejected defendant's argument and has held that "prosecutors may 'take into account the concerns expressed about capital punishment by prospective jurors, or any other factor, in exercising peremptory challenges.' " *State v. Robbins*, 319 N.C. 465, 494, 356 S.E.2d 279, 297 (quoting *Brown v. North Carolina*, 479 U.S. 940, 940, 93 L. Ed. 2d 373, 374 (1986) (O'Connor, J., concurring) ), *cert. denied*, 484 U.S. 918, 98 L. Ed. 2d 226 (1987). We have stated further that it was not error under either the United States Constitution or the North Carolina Constitution "for the prosecution to use its peremptory challenges to excuse veniremen who had qualms about the death penalty," even though a juror could not have been excused for cause because of those concerns. *State v. Allen*, 323 N.C. 208, 222, 372 S.E.2d 855, 863 (1988), *judgment vacated on other grounds*, --- U.S. ---, 108 L. Ed. 2d 601 (1990); *see State v. Artis*, 325 N.C. 278, 337, 384 S.E.2d 470, 504 (1989) ("[I]t is neither constitutionally nor otherwise improper to use peremptory challenges to strike veniremen who have voiced some qualms about imposing the death penalty."), *judgment vacated on other grounds*, --- U.S. ---, 108 L. Ed. 2d 604 (1990). We hold that this issue has previously been decided adversely to defendant and find no error.

VI.

[6]   Defendant next contends that the trial court erred in denying defendant's request for a jury instruction on voluntary intoxication because the requested instruction was supported by the evidence. We disagree and hold that the trial court properly denied defendant's request for an instruction on voluntary intoxication.

This Court has previously held:

A defendant who wishes to raise an issue for the jury as to whether he was so intoxicated by the voluntary consump-

tion of alcohol that he did not form a deliberate and premeditated intent to kill has the burden of producing evidence, or relying on evidence produced by the state, of his intoxication. Evidence of mere intoxication, however, is not enough to meet defendant's burden of production. He must produce substantial evidence which would support a conclusion by the judge that he was so intoxicated that he could not form a deliberate and premeditated intent to kill.

*State v. Mash,* 323 N.C. 339, 346, 372 S.E.2d 532, 536 (1988).

In the case *sub judice,* defendant's wife testified that defendant drank every day. She stated that "[h]e drank more than three or four [mixed drinks of liquor] a day. If he set [sic] up all night, he would drink all night." On the morning of the murder, defendant consumed "maybe three or four" drinks before leaving the house. After leaving the house, defendant drove himself and his wife to visit his mother. After stopping at two different places for whiskey and a six-pack of beer, they arrived at defendant's aunt's house. After getting no answer, defendant drank two and a half cans of beer as they drove around and stopped at a wooded area to urinate. They then drove to Mr. Walker's store, arriving at approximately 1:45 p.m. After the shots were fired in the store, defendant returned to the car and told his wife, "[L]et's get out of here."

The record shows that defendant was able to drive a car, fire the murder weapon, and hit the victim with all three shots. After killing his victim, defendant was able to recognize the gravity of what he had done and flee the scene.[1] We find that the evidence presented during the guilt phase of the trial did not satisfy defendant's burden of proving that he was so completely intoxicated as to render him incapable of forming a deliberated and premeditated purpose to kill. We hold that the evidence was insufficient to support an instruction on voluntary intoxication. This assignment of error is without merit.

## VII.

[7] In defendant's next assignment of error, he contends that the district attorney allegedly made five improper statements during

---

1. Defendant notes that he testified during the *sentencing phase* of the trial that he had consumed five or six drinks that morning and they were having an effect on him. However, since this testimony was not presented to the trial court when it made its ruling in the *guilt phase,* it is not relevant to this assignment of error.

**STATE v. BROGDEN**

[329 N.C. 534 (1991)]

his closing argument. From the outset, we note that defendant made no objection at trial. We have previously stated that "it is only reversible error for the trial judge not to intervene *ex mero motu* where the argument is so grossly improper as to be a denial of due process." *State v. Zuniga*, 320 N.C. 233, 257, 357 S.E.2d 898, 914, *cert. denied*, 484 U.S. 959, 98 L. Ed. 2d 384 (1987). We hold that none of the following arguments, which defendant contends were improper, rise to the level of being "grossly improper."

Defendant first argues that the district attorney improperly vouched for the credibility of witness Jean Brogden, defendant's wife. However, an examination of the record reflects that the district attorney told the jurors that they should believe her because her testimony was corroborated and was against her penal interest. We find that the district attorney's argument in that context is not improper.

Defendant next alleges that the district attorney's contentions about the order in which the fatal shots were fired and the position of the victim's body were improperly admitted. In his closing argument, the district attorney contended that the first shot was fired at the victim's heart, the second to the victim's stomach, and the third to the victim's face when the victim was helpless. The State responds that the district attorney's argument was based on the evidence and reasonable inferences to be drawn from that evidence. It is well settled that:

> Argument of counsel is largely within the control and discretion of the trial judge. Counsel must be allowed wide latitude in the argument of hotly contested cases. Counsel for both sides are entitled to argue to the jury the law and the facts in evidence and all reasonable inferences to be drawn therefrom.

*State v. Lynch*, 300 N.C. 534, 551, 268 S.E.2d 161, 171 (1980).

It is reasonable to infer from the physical evidence presented in this case that the shot to the victim's left cheek was the final, fatal shot, administered after the victim was felled and in a position of helplessness. The medical examiner testified that the path of the bullet was from the left to the right, downward, and slightly back. We find that the evidence in this case is sufficient to support the reasonable inference of the order of shots and the position

of the victim's body during the killing, and we hold there was no error.

Defendant also objects to the district attorney's reference to defendant's failure to refute ballistics testimony by noting that defendant had received advance notice and could. have contested the evidence if it were not true. The State's ballistics report, which defendant did not refute, showed that the three bullets recovered from the victim were fired from defendant's gun. Defendant contends that such an argument is "beyond the record." We disagree. The State may properly bring the defendant's failure to produce exculpatory evidence or to contradict evidence presented by the State to the jury's attention in its closing argument. *State v. Mason*, 315 N.C. 724, 340 S.E.2d 430 (1986). In its closing argument, the State may argue the law and the facts and all reasonable inferences to be drawn from those facts. *State v. Lynch*, 300 N.C. 534, 268 S.E.2d 161.

Defendant also objects to a statement made by the district attorney suggesting to the jury that defendant had a prior criminal record. In attempting to impeach the testimony of defendant's wife, defendant presented the testimony of a firearms dealer but noted that the dealer was limited in what he could say because "he might have some problems. That's where that 5th Amendment comes from." In his closing argument, the district attorney referred to the firearms dealer's testimony and said:

Of course, you heard their own witness, the gun man, who, as [defendant's attorney] said, is in sort of a bind. By the way, he did [not] really explain that—why he is in sort of a bind.

He's a licenced [sic] firearm dealer. What type people can't you sell guns to? You figure that out.

We agree that the statement appears to be an improper suggestion as.to defendant's prior criminal record. However, assuming, *arguendo*, that the statement was improper, it was not so egregious as to be grossly improper and warrant intervention *ex mero motu* by the trial court. Defendant's right to a fair trial was not compromised by this one remark, as there was ample evidence on which the jury could have based its verdict.

Finally, defendant argues that the district attorney improperly suggested in his closing argument that defendant robbed the victim

because he had no other source of income. He contends that the statement was made in bad faith because the State was aware that defendant had received $2,000 by forging checks from his mother's account, and the presence of these additional funds undercuts the State's theory of defendant's motive for the robbery. We disagree and find no error.

The evidence indicated that defendant and his wife were unemployed and that money was so short that they could not pay their rent in full. In addition, the evidence that defendant forged checks worth $2,000 was not addressed until the sentencing phase and therefore is not relevant to the district attorney's knowledge of the source of the income during the guilt phase of the trial, when he made the statement. We find that these five statements made by the district attorney during his closing argument do not rise to the level of gross impropriety that would have warranted intervention *ex mero motu* by the trial court.

## SENTENCING PHASE ISSUE

## VIII.

[8] Defendant contends that the trial court's sentencing instructions, considered in their totality, violate *Mills v. Maryland*, 486 U.S. 367, 100 L. Ed. 2d 384 (1988), and *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369, *on remand*, 327 N.C. 31, 394 S.E.2d 426 (1990). We agree. The State responds that the trial court orally modified the written instructions on Issues Three and Four such that there was no error, and even assuming error, it was harmless beyond a reasonable doubt.

The trial court submitted and the jury unanimously found the aggravating circumstances that "defendant had been previously convicted of a felony involving the use or threat of violence to the person," N.C.G.S. § 15A-2000(e)(3) (1988), and that the murder had been "committed for pecuniary gain," N.C.G.S. § 15A-2000(e)(6) (1988). The trial court submitted but the jury failed to find *any* of the mitigating circumstances as follows:

ISSUE TWO:

DO YOU UNANIMOUSLY FIND FROM THE EVIDENCE THE EX-
ISTENCE OF ONE OR MORE OF THE FOLLOWING MITIGATING
CIRCUMSTANCES?

ANSWER: <u>No</u>.

. . . .

(1) This murder was committed while the defendant was under the influence of mental or emotional disturbance.

ANSWER: <u>No</u>.

(2) This murder was actually committed by another person and the defendant was only an accessory to the murder and his participation in the murder was relatively minor.

ANSWER: <u>No</u>.

(3) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired.

ANSWER: <u>No</u>.

(4) You should also consider the following circumstances arising from the evidence which you find have mitigating value.

. . . .

(4-a) The defendant was reared by hard-working parents as one of three children and worked to help out the family while at home.

ANSWER: <u>No</u>.

(4-b) The defendant graduated from North Duplin High School.

ANSWER: <u>No</u>.

(4-c) The defendant was a loving and caring step-father and showed natural love and affection for his step-son, Jason.

ANSWER: <u>No</u>.

(4-d) The defendant has expressed remorse and concern for the death of John Robert Walker and he is repentant.

ANSWER: <u>No</u>.

**STATE v. BROGDEN**

[329 N.C. 534 (1991)]

(4-e) The defendant has expressed remorse and concern for the family and friends of John Robert Walker.

ANSWER: No.

(4-f) The defendant has adjusted well to prison life and has not violated any of the rules and regulations relating to behavior of inmates since his incarceration on March 9, 1988.

ANSWER: No.

(4-g) The defendant loved and respected his mother, and helped provide her financial assistance while growing up; and the defendant had a good relationship with his brothers.

ANSWER: No.

(4-h) The defendant's father committed suicide requiring the defendant to assume primary responsibilities at an early age in life.

ANSWER: No.

(4-i) The defendant's first wife, who[m] he loved dearly, died of cancer.

ANSWER: No.

(4-j) The defendant, after his father's suicide, worked to keep the family business successful.

ANSWER: No.

(5) Any other circumstance or circumstances arising from the evidence which you the jury deem to have mitigating value.

ANSWER: No.

In *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369, the United States Supreme Court held unconstitutional our requirement that in capital cases jurors must unanimously agree upon the existence of a mitigating circumstance before considering it during the sentencing phase. Our review of the record reveals that the jury here was repeatedly so instructed. The jury answered "no" to each of fourteen mitigating circumstances submitted. In both the oral and written instructions on Issue Two, the court instructed the jury that it must be unanimous to find a mitigating

circumstance, and if it were not unanimous, it should answer the mitigating circumstance "no." Such error requires us to order a new sentencing hearing unless the State can demonstrate beyond a reasonable doubt that it was harmless. *State v. McNeil*, 327 N.C. 388, 395 S.E.2d 106 (1990), *cert. denied*, --- U.S. ---, 113 L. Ed. 2d 459 (1991). Thus, the issue becomes whether the *McKoy* error in this case can be deemed harmless beyond a reasonable doubt.

The State contends that there was no *McKoy* error because the jury was specifically instructed orally, on Issues Three and Four, that any individual juror could consider a circumstance in mitigation shown by defendant even if the circumstance had not been found unanimously by the jury in Issue Two. The record reflects that the trial court explained the third and fourth issues as follows:

Now, *Issue Three*: Do you *unanimously* find beyond a reasonable doubt that the mitigating circumstance or circumstances found by you is, or are, insufficient to outweigh the aggravating circumstances [sic] or circumstances found by you?

. . . .

*Furthermore, in deciding this issue, any individual juror may consider any circumstance, or circumstances, arising from the evidence which that juror deems to have mitigating value, irrespective of whether or not such circumstance has been unanimously found to exist.*

If you *unanimously* find beyond a reasonable doubt that the mitigating circumstances found by you are insufficient to outweigh the aggravating circumstances found by you, you would answer Issue Three, "yes".

. . . .

Now *Issue Four*: Do you *unanimously* find beyond a reasonable doubt that the aggravating circumstance or circumstances found by you is, or are, sufficiently substantial to call for the imposition of the death penalty when considered with the mitigating circumstance or circumstances found by you?

. . . .

> *In answering Issue Four, none of you is precluded from considering anything in mitigation that you find to exist, even if that mitigating circumstance was not unanimously agreed upon.*
>
> . . . .
>
> *Again, when making this final balance, each of you may individually consider any circumstance in mitigation that you determine to exist, regardless of whether or not that circumstance was found unanimously to exist. That is to say, that in deciding Issue Four, any individual juror may consider any circumstance or circumstances arising from the evidence which that juror deems to have mitigating value, irrespective of whether or not such circumstance has been unanimously found to exist.*

(Emphasis added.)

The State notes that the additional oral instructions repeatedly admonished the jurors that in the initial balancing of Issue Three and the final balancing of Issue Four, they could individually consider and give effect to circumstances in mitigation which they found to exist, regardless of whether they were unanimously found in Issue Two. Thus, the State argues that the *McKoy* constitutional principle was not violated in the present case. We disagree.

While the oral instructions given by the trial court on Issues Three and Four attempted to correct the error, the written "Issues and Recommendation as to Punishment" form, which the jurors had been handed individually to follow as the verbal instructions were given, did not contain the alleged curative instruction. The form provided:

ISSUE THREE:

> DO YOU *UNANIMOUSLY* FIND BEYOND A REASONABLE DOUBT THAT THE MITIGATING CIRCUMSTANCE OR CIRCUMSTANCES FOUND BY YOU IS, OR ARE, INSUFFICIENT TO OUTWEIGH THE AGGRAVATING CIRCUMSTANCE OR CIRCUMSTANCES FOUND BY YOU?
>
> . . . .

ISSUE FOUR:

> DO YOU *UNANIMOUSLY* FIND BEYOND A REASONABLE DOUBT THAT THE AGGRAVATING CIRCUMSTANCE OR CIRCUMSTANCES

STATE v. BROGDEN

[329 N.C. 534 (1991)]

FOUND BY YOU IS, OR ARE, SUFFICIENTLY SUBSTANTIAL TO CALL FOR THE IMPOSITION OF THE DEATH PENALTY WHEN CONSIDERED WITH THE MITIGATING CIRCUMSTANCE OR CIRCUMSTANCES FOUND BY YOU?

(Emphasis added.) When both the written and oral instructions are considered in their totality, there is a "reasonable possibility" that the instructions could have been understood to mean that jurors, in answering Issues Two, Three, and Four, could only consider in mitigation those mitigating circumstances found unanimously by the jury. See State v. Huff, 328 N.C. 532, 402 S.E.2d 577 (1991). We conclude that the instructions to the jury, taken as a whole, constitute McKoy error.

Further, having determined that the instructions to the jury constituted McKoy error, we cannot conclude that such error was harmless by reason of insufficiency of the evidence to support any of the tendered mitigating circumstances not found by the jury. Fourteen mitigating circumstances were submitted, including three which are statutory, but not one was found by the jury. Neither defendant nor the State briefed the question of whether the evidence might have been sufficient to support one or more of the mitigating circumstances tendered but not found. Our detailed review of the record reveals that the evidence presented at trial was sufficient to support one or more of these mitigating circumstances submitted.

On this appeal, we need focus only on the mitigating circumstance that defendant was under the influence of mental or emotional disturbance when the murder was committed. N.C.G.S. § 15A-2000(f)(2) (1988). There was evidence tending to support this circumstance. As previously noted, defendant testified, during the sentencing phase, that he had consumed five to six drinks of liquor on the morning in question. In addition, defendant's wife testified that defendant had drunk two to three cans of beer while they were driving around. Defendant further stated that the alcohol was having an effect on him. More importantly, defendant's wife also testified that defendant was explosive and subject to mood swings in which he would become enraged and threaten her.

We cannot say beyond a reasonable doubt that, absent the erroneous unanimity instructions provided to the jury in written form, no juror could have found the existence of this mitigating circumstance and, weighing it against the aggravating circumstances, could have changed the recommendation of the jury from death

to life imprisonment. The potential prejudice from improper instructions on the mental or emotional disturbance mitigating circumstance is considerable because the circumstance is statutory and is therefore presumed to have mitigating value. *State v. Huff*, 328 N.C. 532, 402 S.E.2d 577; *State v. Quesinberry*, 328 N.C. 288, 401 S.E.2d 632 (1991).

In conclusion, we find no error in the guilt phase of defendant's capital trial; however, we find *McKoy* error in the sentencing phase. We therefore vacate the sentence of death and remand the case to Superior Court, Duplin County, for a new capital sentencing proceeding in the first-degree murder case.

For the reasons given, we find no error in the robbery with a dangerous weapon conviction but remand the murder conviction to the Superior Court, Duplin County, for a new capital sentencing proceeding not inconsistent with this opinion or the opinion of the United States Supreme Court in *McKoy*.

No. 88CRS933, robbery with a dangerous weapon—No error.

No. 88CRS932, first-degree murder—guilt phase: No error; sentencing phase: death sentence vacated; remanded for new capital sentencing proceeding.