STATE v. DOWNEY

[127 N.C. App. 167 (1997)]

———

STATE OF NORTH CAROLINA v. LAVOISHA LUCREATTA DOWNEY

No. COA96-1228

(Filed 5 August 1997)

**Evidence and Witnesses § 1009 (NCI4th)— unavailable declarant—residual hearsay exception—trustworthiness—corroborating evidence—Confrontation Clause violation—prejudicial error**

In a prosecution for murder, defendant's rights under the Confrontation Clause were violated by the admission of the testimony of an unavailable declarant identifying defendant as one of the murderers pursuant to the residual hearsay exception of Rule 804(b)(5) where the trial court relied solely on corroborating evidence in determining the trustworthiness of the hearsay evidence. In this case, the testimony was sharply conflicting as to defendant's guilt, and while the evidence of defendant's guilt was strong, it was not overwhelming; therefore, the trial court's error was not harmless beyond a reasonable doubt.

Appeal by defendant from judgment and commitment entered 4 April 1996 by Judge Orlando F. Hudson in Durham County Superior Court. Heard in the Court of Appeals 2 June 1997.

At trial, the State's evidence tended to show the following: On or about 18 April 1994, James Henderson and his nephew Tony Henderson stole a safe from the home of Peggy M. Brown. The safe belonged to the defendant, Lavoisha L. Downey, who had kept the safe in Ms. Brown's house since early April 1994. Defendant Downey allegedly used the safe to store drugs and money for herself and a man named Robert Tucker. When James and Tony Henderson stole the safe, the safe contained cocaine.

On 19 April 1994, having discovered that her safe had been stolen, defendant Downey and her cohorts confronted James Henderson about the stolen safe. Upon being confronted, James Henderson told defendant Downey that another person he knew had the safe. While armed, defendant Downey and one of her cohorts, also armed, then forced Mr. Henderson to drive them to meet with the person who allegedly had the safe. Defendant Downey sat in the front passenger seat and held a gun to Mr. Henderson's head as he drove.

Mr. Henderson escaped injury at this time by luring defendant Downey and her accomplice out of the vehicle and then by accelerating wildly away in reverse. Friends of Mr. Henderson who viewed the incident from a distance, testified that at least two people stood in the street shooting at Mr. Henderson as he drove away. The location of bullet holes in the vehicle driven by Mr. Henderson tends to corroborate this testimony.

On 20 April 1994, James Henderson returned to the house in Durham where he had been confronted by defendant Downey the previous day. Mr. Henderson arrived at the house bleeding and with a number of shotgun pellets still embedded in his skin. At the house, Mr. Henderson's friends used tweezers and rubbing alcohol to remove the shotgun pellets and clean Mr. Henderson's wounds. Mr. Henderson stated to his friends that he had been shot by "Voisha and her gangster crew." Defendant Downey at times answered to and was known by the nickname, "Voisha."

Three days later, on 23 April 1994, James Henderson rode his motorcycle down Alston Avenue in Durham. While on Alston Avenue, Mr. Henderson was approximately one block behind a car containing his nephew Tony Henderson and one other man. As Tony Henderson stopped his car at a red light, he noticed James Henderson pulling his motorcycle to a halt at a stop sign at the previous intersection. Tony Henderson motioned for James Henderson to join him at a nearby gas station and James Henderson indicated by motioning that he would do so. Before James Henderson could do so, however, defendant Downey and two others approached him from behind firing their weapons repeatedly and fatally wounding James Henderson before he could escape.

The defense presented four witnesses who testified that they saw only two people, both males, shoot at Mr. Henderson on 23 April 1994. Two other witnesses testified on defendant's behalf in support of her alibi theory. Their testimony placed defendant at Jocelyn Simms'

**STATE v. DOWNEY**

[127 N.C. App. 167 (1997)]

apartment home at the time of the murder. The defense also introduced a 911 call describing the shooting as having been perpetrated solely by two males. Defendant Downey testified on her own behalf and denied any part in the murder of James Henderson. After trial on 25 March 1996, the jury returned a verdict of first degree murder against defendant Downey and the trial court imposed a sentence of life imprisonment.

Defendant appeals.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Thomas F. Moffitt, for the State.*

*Mark E. Edwards for defendant-appellant.*

EAGLES, Judge.

Defendant argues that the trial court erred in admitting an eyewitness's out-of-court statement under the residual exception to the hearsay rule. G.S. 8C-1, Rule 804(b)(5) (1983). Defendant contends that admission of the statement here implicated the Confrontation Clause of the Sixth Amendment to the United States Constitution because the trial court relied solely on corroborating evidence in determining the inherent trustworthiness of the unavailable declarant's statement. In light of our Supreme Court's recent decision in *State v. Tyler*, 346 N.C. 187, 485 S.E.2d 599 (1997), we agree.

Four days after the shooting, an alleged eyewitness to the shooting, Eddie Roper, gave police a signed statement identifying defendant as one of the murderers. Mr. Roper stated that he knew the defendant well and had known her for approximately eight years prior to the shooting. Mr. Roper stated that defendant had a child with his brother, Darrell Roper. At the time of trial, Mr. Eddie Roper failed to respond to the State's subpoena. The State argued that Mr. Roper had become unavailable and moved to introduce his signed statement under the residual hearsay exception in Rule 804(b)(5).

"Rule of Evidence 804(b)(5) provides for the admission of hearsay statements when the declarant is unavailable and the statement is not covered by any specific exception, but is determined to have 'equivalent circumstantial guarantees of trustworthiness.' " *State v. Swindler*, 339 N.C. 469, 473, 450 S.E.2d 907, 910 (1994) (quoting G.S. 8C-1, Rule 804(b)(5)). Rule 804(b)(5) is considered to be a "residual" hearsay exception, rather than a "firmly rooted" one, *Tyler*, 346 N.C. at 200, 485 S.E.2d at 606 (1997), and hearsay statements

offered under Rule 804(b)(5) are deemed "presumptively unreliable and inadmissible for Confrontation Clause purposes." *Idaho v. Wright*, 497 U.S. 805, 818, 111 L. Ed. 2d 638, 654 (1990). When offered under a "residual" exception, the Confrontation Clause requires exclusion of the out-of-court statement "unless an affirmative reason, arising from the circumstances in which the statement was made, provides a basis for rebutting the presumption that a hearsay statement is not worthy of reliance at trial. . . ." *Wright*, 497 U.S. at 821, 111 L. Ed. 2d at 656.

"[E]ven if certain hearsay evidence does not fall within 'a firmly rooted hearsay exception' and is thus presumptively unreliable and inadmissible for Confrontation Clause purposes, it may nonetheless meet Confrontation Clause reliability standards if it is supported by a 'showing of particularized guarantees of trustworthiness' " *Id.* at 817, 111 L. Ed. 2d at 653 (quoting *Lee v. Illinois*, 476 U.S. 530, 543, 90 L. Ed. 2d 514, 527-28 (1986)). The statement must possess the requisite circumstantial guarantees of trustworthiness based on the "totality of circumstances that surround the making of the statement. . . ." *Id.* at 820, 111 L. Ed. 2d at 655-56. The court should consider:

(1) assurances of the declarant's personal knowledge of the underlying events, (2) the declarant's motivation to speak the truth or otherwise, (3) whether the declarant has ever recanted the statement, and (4) the practical availability of the declarant at trial for meaningful cross-examination.

*State v. Triplett*, 316 N.C. 1, 10-11, 340 S.E.2d 736, 742 (1986). If the court is to allow admission of hearsay evidence under Rule 804(b)(5), the statement "must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial." *Wright*, 497 U.S. at 822, 111 L. Ed. 2d at 657. Corroborating evidence cannot be relied upon "in finding the circumstantial guarantees of trustworthiness required in order to protect defendant's rights under the Confrontation Clause of the United States Constitution." *Tyler*, 346 N.C. at 202, 485 S.E.2d at 607.

. The trial court here conducted a hearing outside the presence of the jury and entered an order concluding in relevant part "[t]hat the statement [by Mr. Roper] is trustworthy in that it is corroborated by physical evidence and statements of witnesses. . . ." In deciding to admit Mr. Roper's statement the trial court made eight findings of fact, every one based solely on the presence of corroborating evidence, supporting its conclusion that Mr. Roper's statement pos-

sessed the requisite circumstantial guarantees of trustworthiness to be admissible under Rule 804(b)(5). We conclude that the trial court committed prejudicial error here in basing its determination of the statement's trustworthiness on the presence of corroborating evidence. *Tyler*, 346 N.C. at 202, 485 S.E.2d at 607. This error implicated defendant's rights under the Confrontation Clause. *Id.*

"A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt." G.S. 15A-1443(b) (1977). "The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless." *Id.* We conclude that the State has not carried this burden here.

The evidence here is sharply conflicting. Aside from Mr. Roper's statement, the State presented three witnesses who testified that they saw defendant Downey shoot Mr. Henderson. Forensic evidence, though not conclusive, also tended to support the contention that defendant Downey was guilty. Furthermore, the State presented strong evidence of defendant Downey's motive and intent to murder Mr. Henderson.

On the other hand, defendant presented six witnesses here in support of her alibi theory. Defendant also testified in her own defense and denied any participation in the crime. Each of the three State's witnesses placing defendant Downey at the scene could be characterized on cross-examination as biased due to their close ties to Mr. James Henderson. At least one of the witnesses, Tony Henderson, likely had reason to fear for his own safety if defendant Downey went free because he too had allegedly participated in the theft of defendant Downey's safe. It is possible that the jury considered Mr. Roper's statement, which we have held was improperly admitted here, to be more credible than the three witnesses' testimony because of Mr. Roper's apparently closer affiliation and allegiance to defendant Downey than to the slain Mr. Henderson.

In sum, while the State's evidence of record is strong, it is not overwhelming, and on this record we cannot conclude as a matter of law that the trial court's error was harmless beyond a reasonable doubt. Our role as a reviewing court is not to judge whether a defendant is a good citizen or not, but only to ensure that every citizen is fairly and equally afforded the fair trial guaranteed by the United States Constitution. We note also here that defendant Downey assigns error to the prosecution's improperly calling defendant Downey's

character into question. Assuming arguendo that this was error, we are confident that this error will not be repeated on remand and, if so, that the trial court will give a adequate curative instruction so as to avoid any prejudice to defendant Downey. We need not address defendant Downey's remaining assignments of error.

New trial.

Judges McGEE and SMITH concur.