STATE OF NORTH CAROLINA v. JOHN FRANCES HAYES

No. COA97-697

(Filed 21 July 1998)

### 1. Evidence— motion in limine—objection to denial—preservation of evidentiary issues for appeal

An objection to the denial of a motion in limine is alone sufficient to preserve the evidentiary issues which were the subject of the motion in limine for review by the appellate court where (1) there has been a full evidentiary hearing at which the substance of the objection(s) raised by the motion in limine has been thoroughly explored; (2) the order denying the motion is explicit and definitive; (3) the evidence actually offered at trial is substantially consistent with the evidence explored at the hearing on the motion; and (4) there is no suggestion that the trial court would reconsider the matter at trial.

### 2. Evidence— motion in limine—appellate review—statements by murder victim—objection at trial not required

Defendant's failure to object at trial to evidence of a murder victim's statements to several witnesses did not constitute a waiver of his right to appellate review of the admissibility of those statements where defendant made a motion in limine to exclude such evidence; a thorough exploration of this evidence was made at a pretrial hearing on the motion; the trial court's order denying the motion was explicit and definitive in addressing the evidentiary questions raised by the motion; there was no suggestion in the order of the trial court that it would reconsider the matter at trial; and there was no substantial inconsistency between the evidence offered at the pretrial hearing and the evidence offered at the trial.

### 3. Evidence— hearsay—state of mind exception—murder victim's statements

Testimony by three witnesses about conversations they had with a murder victim in which she told them of defendant's threats to kill her, instances where he told her that she would be the next "Nicole Simpson," and that defendant urinated on the kitchen floor and wiped her hair in the urine were admissible under the state of mind exception to the hearsay rule; in

STATE v. HAYES

[130 N.C. App. 154 (1998)]

each instance the victim's statements shed light on her state of mind, her emotions and her physical condition. N.C.G.S. § 8C-1, Rule 803(3).

**4. Evidence— hearsay—residual exception—unavailable declarant—Confrontation Clause—circumstantial guarantees of trustworthiness**

The residual hearsay exception of Rule 804(b)(5) for statements by an unavailable declarant does not qualify as a firmly rooted hearsay exception and thus will violate the Confrontation Clause unless it is supported by a showing of particularized guarantees of trustworthiness.

**5. Evidence— hearsay—residual exception—circumstantial guarantees of trustworthiness—corroborating evidence**

Corroborating evidence cannot be relied upon to find the circumstantial guarantees of trustworthiness required to protect defendant's rights under the Confrontation Clause.

**6. Evidence— hearsay—residual exception—statements of murder victim—circumstantial guarantees of trustworthiness**

A murder victim's statement to a witness that "she had run into the defendant's fist" possessed circumstantial guarantees of trustworthiness so as to render the statement admissible under the residual exception to the hearsay rule set forth in Rule 804(b)(5) where the victim and the witness were friends who socialized with their husbands and with other friends at their country club; the victim never recanted the statement and had no reason to lie about the statement because she knew that the witness was familiar with the volatile relationship between the victim and the defendant; and the victim had not sought legal advice from her attorney at the time she made the statement. The victim's statements to a second witness about verbal and physical abuse she was receiving from defendant also possessed substantial guarantees of trustworthiness so as to render them admissible under the residual exception where the victim was motivated to speak the truth to the witness, her dance instructor and friend; the victim did not recant the statements; and the victim's statements were inconsistent with a calculated approach to create a pattern of abuse that may support domestic litigation. Furthermore, the trial court's findings indicating that it consid-

STATE v. HAYES

[130 N.C. App. 154 (1998)]

ered corroborative evidence to support its rulings under Rule 804(b)(5) constituted harmless error where the determination of trustworthiness was fully supported by other findings not based on corroborative evidence.

**7. Evidence— hearsay—state of mind exception—exclusion of evidence—harmless error**

Assuming that a statement made by a murder defendant that he loved the victim (his wife) was admissible under the then-existing emotion or state of mind exception to the hearsay rule, the trial court's exclusion of the statement was harmless error where the statement was made some eight years before defendant killed the victim and did not shed any light on his feelings for her at the time of her death, and the trial court allowed other evidence which showed that defendant provided for all of the victim's needs, was concerned about her health, did not threaten her even if she provoked him, and treated her well.

**8. Constitutional Law— presence at trial—in-chambers conferences without defendant—harmless error**

Defendant's absence from in-chambers conferences in this capital trial constituted harmless error where the issue discussed at the first conference related to the confidentiality of an attorney's records and his availability as a witness and did not relate to the charges against defendant; at the second conference, the trial court allowed defendant's request to record the trial in its entirety and discussed with the attorneys the possible sequestration of certain witnesses, and these discussions did not relate in any material aspect to the charges against defendant; at the third conference, the attorneys and the judge discussed the identification and presentation of certain medical records, and these matters did not affect in any material aspect the charges against defendant; and the fourth conference involved a discussion to determine if there were any other matters that needed to be addressed before continuing with the trial on the next day.

**9. Homicide— self-defense—duty to retreat—failure to instruct—harmless error**

A defendant on trial for killing his wife with a baseball bat was not entitled to an instruction on self-defense, and any error in the instruction given from the trial court's failure to inform the jury that defendant had no duty to retreat in his own home was harmless, where the evidence showed that the sixty-

**STATE v. HAYES**

[130 N.C. App. 154 (1998)]

year-old defendant was assaulted by his wife when she threw a hammer at him which struck him on the leg, kicked him and attempted to hit him with a baseball bat; defendant wrestled the bat from her and after obtaining sole possession of the bat proceeded to strike her multiple times about her body with the bat, causing her death; and there was no evidence in the record that the victim presented any threat to the defendant after he acquired the bat from her.

**10. Criminal Law— sentencing—mitigating factors—cancer surgery—finding not required**

The trial court did not err by failing to find defendant's recent cancer surgery as a mitigating factor for the second-degree murder of his wife where defendant established no link between his illness and his culpability.

**11. Criminal Law— sentencing—mitigating factors—duress— insufficient evidence**

The trial court did not err by failing to find as a mitigating factor for defendant's second-degree murder of his wife with a baseball bat that defendant acted under duress in killing his wife where defendant presented evidence of the wife's infidelity, her attempt to remove a large sum of money from defendant's bank account, and her attempt to attack defendant in the garage of their home, since this evidence did not establish that defendant was under duress and forced to do some act that he otherwise would not have committed.

Appeal by defendant from judgment dated 26 November 1996 by Judge Chase B. Saunders in Mecklenburg Superior Court. Heard in the Court of Appeals 17 March 1998.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Alexander McC. Peters, for the State.*

*Rudolf & Maher, P.A., by David S. Rudolf, Thomas K. Maher, and M. Gordon Widenhouse, Jr.; and Smith Helms, Mulliss & Moore, L.L.P., by James G. Exum, Jr., for defendant appellant.*

GREENE, Judge.

John Frances Hayes (defendant) appeals a sentence of life imprisonment based upon a jury verdict finding him guilty of second-degree murder of his wife, Fran Hayes (Mrs. Hayes). This conviction came after the defendant's capital trial for first-degree murder.

Prior to the trial the State gave notice, pursuant to N.C. Gen. Stat. § 8C-1, Rule 804(b)(5), of its intent to offer into evidence certain statements made by Mrs. Hayes. The notice provided the substance of those statements. The defendant filed a motion *in limine* to exclude the introduction of this evidence. At a pre-trial hearing conducted in response to the motion *in limine* eleven witnesses were tendered and examined by both the State and the defendant. At the conclusion of that hearing the trial court entered a detailed order addressing each of the statements included in the notice provided by the State. In each instance the trial court reviewed the evidence offered, provided an analysis and ruled on whether the evidence was admissible. The trial court determined that some of the evidence was admissible under Rule 803(3), some admissible under Rule 804(b)(5), and some admissible under Rule 404(b). In at least one instance (a portion of Jean Coffey's testimony) the trial court deferred ruling on the admissibility of the evidence until it was offered at trial. Finally, the trial court included in its order the following language: "[T]he Court reserves the right to reconsider its rulings on the admissibility of this evidence if the parties 'open the door' or subsequently seek to offer it under other Rules of Evidence not considered or noted at the hearing."

At trial the State presented, without objection, and the trial court admitted the following testimony, which in substance was the same testimony tendered at the hearing on the motion *in limine* and which the defendant now assigns as error:

### Ila Martin

Mrs. Ila Martin (Mrs. Martin) testified that around August of 1984, Mrs. Hayes told her that she had "ran into [the defendant's] fist." This statement was made during a conversation at Mrs. Hayes' birthday party at which Mrs. Martin had inquired as to the reason for the bruise on Mrs. Hayes' face. The trial court, at the hearing on the motion *in limine*, ruled this testimony inadmissible under Rule 803(3) but admissible under Rule 804(b)(5). In support of its ruling the trial court entered the following analysis:

STATE v. HAYES

[130 N.C. App. 154 (1998)]

As required by [*State v. Triplett*], 316 N.C. 1 (1986), the undersigned analyzes the hearsay to address the issue of the materiality of the evidence and its "equivalent circumstantial guarantees of trustworthiness."

The evidence is material. "When a husband is charged with murdering his wife, the State may introduce evidence covering the entire period of his married life to show malice, intent, and ill will towards the victim [. . . .]" [*State v. Lynch*], 327 N.C. 210 [] (1990). []Specifically, evidence of frequent quarrels, [separations], reconciliations and ill-treatment is admissible as bearing on the intent, malice, motive, premeditation and deliberation. [*State v. Moore*], 275 N.C. 198 (1969). In this case, where the only witness to the events giving rise to the murder is the defendant, such evidence is of great necessity and is "more probative on the point for which it is offered than any other evidence which the proponent can produce through reasonable efforts." [*Triplett*], *supra*.

Mrs. Martin and the victim had a relationship as friends who socialized with other lady friends and at the country club with their husbands.

The victim never recanted the statement she made to Mrs. Martin. There was no reason to fabricate the story of the violent act as the victim knew that Mrs. Martin was familiar with the strife-torn relationship of the parties from prior social interaction. Mrs. Martin ultimately stopped the relationship with the parties due to the behavior of the parties.

As of the date of this incident the victim had not sought legal advice from her attorney, Mr. Diehl, such that the Defense['s] suggestion of preparation for filing a domestic case motived [sic] her statement [is negated].

The statement is further corroborated by the existence of the bruise and the violent episode noted below. Additional corroboration can be found in the testimony of other witnesses to bruises as well as witnesses who testified to the truthfulness of the victim. The manner in which the victim made the statement to Mrs. Martin who noted embarrassment is further corroboration of the truthfulness of the statement. Based on the foregoing, there is a reasonable probability of the truthfulness of this statement. The jury may draw the inference as to the colloquial import of the statement.

**STATE v. HAYES**

[130 N.C. App. 154 (1998)]

The undersigned considered the evidence offered by the Defense which attacks the credibility of the victim. There was no evidence specifically rebutting the occasion of this instance. Medical records from this time frame do not exclude its possibility. Notwithstanding evidence of the victim's psychiatric treatment, history of alcohol use, extramarital affairs, medication, and verbal cursing bouts with her husband during the marriage, the court does not find that such evidence outweighs that of the State so as to bar the admission of this evidence.

In conclusion, the statement is material, possesses the circumstantial guarantees of trustworthiness, will serve the interests of justice, and is ruled **admissible**.

### Jean Coffey

Jean Coffey (Ms. Coffey) testified that in June of 1994, Mrs. Hayes came to her when she was upset and told her that the defendant had told Mrs. Hayes that "if she ever left him he would kill her, and he would see her dead before she ever had any of his money." This statement was made in the context of a conversation Ms. Coffey had with Mrs. Hayes at the Fred Astaire Dance Studio. The trial court in ruling on the motion *in limine* allowed this evidence pursuant to Rule 803(3) of the Rules of Evidence. In support of its ruling the trial court provided the following analysis:

The statements of the decedent are **admissible** to show the status of the relationship of the victim with the [d]efendant. [*See State v. Alston*], 341 N.C. 198[] (1995). "It is well established in North Carolina that a murder victim's statements falling within the state of mind exception to the hearsay rule are highly relevant to show the status of the victim's relationship to the defendant." [*Alston*], *supra*. State of mind is relevant to show a "stormy relationship between the victim and [d]efendant prior to the murder." [*State v. Lynch*], 327 N.C. 210 (1990). The statements include a statement of the "belief" of the victim that she was in danger. Events later confirmed this. This satisfies the requirement of [*State v. Hardy*], 339 N.C. 207 (1994). These statements reveal directly and by implication the state of mind of the victim and are more probative than prejudicial.

### Mary Losee

Mary Losee (Ms. Losee) testified that on or about 8 July 1994, while at a club, she had a conversation with Mrs. Hayes where Mrs.

Hayes told her that the defendant was calling her "Nicole" and referring to Nicole Simpson. Mrs. Hayes said that the defendant had told her that he would do the same thing to her that had been done to Nicole Simpson. Mrs. Hayes said that when she went to the bank to get some money, she told the defendant (who followed her to the bank) that the money would be her "get out" money and that she was leaving him. Ms. Losee further testified that Mrs. Hayes was very happy when she and Mrs. Hayes had this conversation at the club on or about 8 July 1994. These conversations occurred four or five days before the death of Mrs. Hayes. The trial court in ruling on the motion *in limine* allowed this evidence under Rule 803(3). In support of its ruling the trial court provided the following analysis: "This statement comes within the state of mind and state of physical condition exception to the hearsay rule, is more probative than prejudicial, and is therefore ruled to be **admissible**."

Ms. Losee further testified that in the fall of 1991, she noticed a bruise on Mrs. Hayes' face and that Mrs. Hayes told her about verbal and physical abuse she was receiving from the defendant. The trial court, at the hearing on the motion *in limine*, allowed the evidence under Rule 804(b)(5). In support of the admission of this evidence the trial court provided the following analysis:

> The evidence possesses the equivalent circumstantial guarantees of trustworthiness. Assurances of the victim's personal knowledge of these events [are] found in the testimony of a witness who witnessed an act of violence (Mrs. Martin) as well as a witness who observed a bruise on another occasion (Ms. Ward). The description of the marks on the arm (finger marks) is consistent with the arm grabbing observed by Mrs. Martin. The throat and cheek marks reflect the possibility of trauma which is not excluded by any of the medical records. The victim was motivated to speak the truth to her friend and dance instructor. The circumstances under which the disclosure was made are inconsistent with a calculated approach to create a pattern of incidents in anticipation of domestic litigation. The victim did not recant the statement. A historical marital relationship featuring verbal abuse and an occasional episode of violence corroborates the reasonable probability of the truth of these statements. The State has met its burden. There is a necessity for this evidence to present the stages of the deterioration of the marital relationship to the jury for their consideration on the material issues in dispute.

Ms. Losee further testified that, at a summer dance in 1993, she asked Mrs. Hayes why she was wearing a long-sleeved blouse. Mrs. Hayes pulled up her sleeve and showed Ms. Losee the bruises all over her arm. The trial court in its order, entered at the conclusion of the hearing on the defendant's motion *in limine*, ruled that this was admissible under Rule 803(3). In support of its ruling the trial court provided the following analysis: "This statement comes within the state of mind and state of physical condition exception to the hearsay rule, is more probative than prejudicial, and is therefore ruled **admissible**."

Ms. Losee also testified that in early 1992, Mrs. Hayes arrived late to an event with swollen eyes and appeared to have been crying. Mrs. Hayes told her that the defendant had become abusive, urinated on the kitchen floor, and pushed Mrs. Hayes down on the floor and wiped the urine with her hair. The trial court in its motion *in limine* order allowed this evidence under Rule 803(3). In support of its ruling the trial court provided the following analysis: "This statement comes within the state of mind and state of physical condition exception of the hearsay rule, is more probative than prejudicial, and is therefore ruled to be **admissible**."

Pete Chambers

Pete Chambers (Mr. Chambers) testified that Mrs. Hayes, in early July 1994, had told him that the defendant had called her the "next Nicole Simpson." The trial court at the conclusion of the hearing on the motion *in limine* allowed the evidence pursuant to Rule 803(3). In support of its ruling the trial court provided the following analysis: "Her statements are admissible to show her state of mind and the nature of her relationship with the [d]efendant. They are more probative than prejudicial. They are admissible."

At the motion *in limine* hearing Mr. Chambers also testified that on 8 July 1994, Mrs. Hayes told him that the defendant had attacked her that day around 7:00 p.m., choked her to the point she could hardly breathe, and then dropped her on the floor. This statement was allowed under Rule 803(3). In support of this ruling the trial court provided the following analysis: "This statement reflects the victim[']s perception of her physical condition during the assault and is **admissible**. It is more probative than prejudicial." At trial Mr. Chambers testified that he had this conversation with Mrs. Hayes the day after she said the defendant had attacked and choked her. There was no objection to this testimony. At trial Mr. Chambers also testi-

fied about an incident where Mrs. Hayes told him that the defendant was urinating on the kitchen floor while he (Mr. Chambers) was talking to her on the telephone. This testimony was not addressed at the hearing on the motion *in limine* and there was no objection to its admission at the trial.

The trial court in its order denying the motion *in limine* deferred ruling on the defendant's objection to the testimony of Jennifer Smathers and that portion of Ms. Coffey's testimony where she stated that Mrs. Hayes had told her that the defendant had been physically and verbally abusive and that she was afraid of him.

At trial, the defendant sought to introduce evidence through the testimony of Annie Lindsey (Ms. Lindsey) that he had told Mrs. Hayes that "[h]e loved her." Ms. Lindsey's testimony indicates that this statement was made while she worked for the defendant and Mrs. Hayes from October of 1984 until January 1986, approximately eight years before the death of Mrs. Hayes. The State objected to this statement and the trial court sustained the objection. The trial court did allow other evidence which showed that the defendant was concerned about Mrs. Hayes' health, provided for her needs, and never threatened or hit Mrs. Hayes, even when she attempted to provoke him.

In summary, all the evidence offered at the trial tends to show the following: On 11 July 1994, the defendant, approximately sixty years old, occupied a home with his wife, Mrs. Hayes. That afternoon, in the garage of their home, the defendant informed Mrs. Hayes that he planned to seek a divorce from Mrs. Hayes. She flew into a rage and threw a hammer at the defendant which struck him on the leg. Mrs. Hayes then picked up a baseball bat, threatening to kill the defendant, and started swinging it at the defendant. The defendant wrestled the bat away from her, as she kicked him, and the defendant struck Mrs. Hayes, with the baseball bat, in her head, neck, torso, and legs, causing her death.

The trial court held several in-chambers conferences during the course of the pre-trial hearings and the trial. While the record does not affirmatively show that the defendant was not in those in-chambers conferences, the State does not argue or object to the defendant's contention that he was not present. The first instance of an unrecorded in-chambers conference between the trial court and counsel occurred at a pre-trial hearing on 24 October 1996. The transcript shows the following:

**STATE v. HAYES**

[130 N.C. App. 154 (1998)]

The Court: Do you have any other witnesses to call at this time or are they scheduled for 2:00?

Prosecutor: Not until 2:00.

The Court: All right. Gentlemen, I'll see you briefly in chambers.

(Whereupon, a brief recess was observed.)

The Court: Let the record reflect that Mr. Diehl[1] has come to court and is waiting on a jury, and that there was a motion pursuant to the suggested guidelines by the state bar that the Court consider the issue of confidentiality, that the Court is in a position to order that the file be turned over in the interest of the administration of justice and the discretion of the Court. . . . [T]he Court would at this point direct that [Mr. Diehl] turn over copies of the file, . . . to counsel for the State and counsel for the defense.

. . . .

I will order that the file be turned over and that Mr. Diehl is authorized to discuss the contents of the file and his attorney-client relationship with counsel for the State and defendant.

The defendant later presented into evidence Mr. Diehl's files concerning Mrs. Hayes and called him as a witness in the trial.

The following indicates the dialogue after the second in-chambers conference cited by the defendant which occurred at the beginning of the trial.

The Court: Counsel, just a couple of matters on the record. At this time we're in the absence of the jury, Madame Reporter.

. . . .

The Court met briefly in chambers with counsel. Counsel for the defendant requested full recordation; granted. Request for sequestration for witnesses for both sides, excluding the coordinators

. . . .

---

1. William K. Diehl (Mr. Diehl) had, prior to Mrs. Hayes' death, advised and counseled with her about her domestic problems. He had been requested by at least one of the parties to appear in this criminal proceeding and turn over his files.

STATE v. HAYES

[130 N.C. App. 154 (1998)]

The third occurrence cited by the defendant is as follows:

The Court: Do you have a list you can represent as being the—well, at this point bring the photographs into chambers; we will go through them briefly. Anything we do in chambers will be reported on the record. I'll make no decision in chambers, but we will at least look at the photographs and see whether or not there is —preliminarily where we are and put all of that on the record. Bring them on up here. [Defense counsel] step on up here and look at the photographs.

(Whereupon [counsel for State and defendant] confer)

(Pause in Proceedings)

(Whereupon [counsel for State and defendant] confer in jury room)

The Court: Madam reporter, we're going to recess until tomorrow at nine o'clock. If you will be here at nine o'clock we will probably voir dire on some photographs. Nine o'clock for us and the jury at nine thirty. Sheriff, come with me; we will get that order in.

(Court stands in overnight recess)

The fourth in-chambers conference cited by the defendant is the following:

The Court: We will take a fifteen minute recess. Let me see counsel in chambers.

(Court stands in recess)

(Court reconvenes)

(Defendant in courtroom)

The Court: Let the record reflect, Madame Reporter, in the absence of the jury the Court met with counsel in chambers and this is the procedural outline of what we discussed. Counsel may supplement, of course. Understanding that, we discussed the status of the case procedurally, and that at this time Mr. Guerrette is going to complete identification of the

STATE v. HAYES

[130 N.C. App. 154 (1998)]

records for purposes of use by the expert witness, that any of the complaint, treatment, or chronology analyses are materials that may be used by the parties but not introduced as of this point. That tomorrow the Court will hear from counsel for the State and the defense regarding the methodology of presenting voluminous medical records and address of any 403 issues of relevancy, cumulative, prejudice, confusion, or misleading of the jury that may arise from some of the records and discuss that issue after the District Attorney has had an occasion to review the large number of records. Investigator Guerrette is going to be asked to identify some abstracts of records of the parties' financial transactions within the past—within several months proceeding the incident. Likewise the medical records for purposes of use by the expert will be identified. This afternoon there will [sic] a voir dire of Dr. Gullick, the psychologist, for purposes of understanding the underlying basis of the expert opinion she will offer. Her testimony will come tomorrow at 9:30 A.M. Tomorrow we will address those issues of the medical records, as I indicated previously. Potentially the evidence may conclude on Wednesday. This particular declaration, of course, is non binding, and potentially there may be arguments and instructions on Thursday. That is the substance of what we discussed in chambers. [Prosecutor] is that accurate? Do you wish to supplement or make any statements?

[Prosecutor]: No, sir.

The Court: Mr. Rudolph?

[Defense Counsel]: No, sir, Your Honor.

The fifth in-chambers conference appears in the record as follows:

The Court: In the absence of the jury let the record reflect the Court met with counsel in order to determine whether or not issues that arose yesterday concerning the .presentation of some of the medical evidence were resolved.

Finally, the substance of the sixth in-chambers conference contested by the defendant was summarized by the trial court on the record, as follows:

> The Court: Let the record reflect that the Court met briefly with counsel and that the Court on the record will state the substance of that conversation. We met briefly in order to see if there were any other matters outstanding that we needed to address this afternoon before we proceeded tomorrow. It appears that there is nothing that we need to do before tomorrow.

After the presentation of the evidence, the trial court gave instructions to the jury. The trial court agreed to instruct on self-defense but refused to give the following instructions, as requested by the defendant:

> When a person is attacked in their own home, he is under no duty to retreat and may stand his ground, even when the attack itself is not murderous. Rather, a person attacked in their own home is justified in fighting in self-defense, regardless of the character of the assault, and is entitled to stand his ground, repel force with force, and to increase his force, so as not only to resist, but also overcome the assault and secure himself from all harm. A person, however, may not use excessive force to repel an attack in their home.

In instructing on self-defense, the trial court informed the jury as follows:

> The defendant would be excused of first and second degree murder on the grounds of self-defense, . . . if first, it appeared to the defendant and he believed it to be necessary to kill the victim in order to save himself from death or great bodily harm.

> And second, the circumstances as they appear to the defendant at the time were sufficient to create such a belief in the mind of a person of ordinary firmness.

> It is for you, the jury, to determine the reasonableness of the defendant's belief from the circumstances as they appeared to him at the time.

> In making this determination you should consider the circumstances as you find them to have existed from the evidence,

including the size, age, and strength of the defendant as compared to the victim; the fierceness of the assault, if any, upon the defendant; and whether or not the victim had a weapon in her possession.

The defendant would not be guilty of any murder or manslaughter if he acted in self-defense, as I have defined it to be, and if he was not the aggressor in bringing on the fight, and did not use excessive force under the circumstances.

. . . .

A defendant uses excessive force if he uses more force than reasonably appeared to him to be necessary at the time of the killing.

It is for you, the jury, to determine the reasonableness of the force used by the defendant under all the circumstances as they appeared to him at the time.

. . . .

Therefore in order for you to find the defendant guilty of murder in the first or second degree the State must prove beyond a reasonable doubt, among other things, that the defendant did not act in self-defense, or failing in this that the defendant was the aggressor with intent to kill or inflict serious bodily harm upon the deceased.

If the State fails to prove either that the defendant did not act in self-defense or was the aggressor with intent to kill or inflict serious bodily harm you may not convict the defendant of either first or second degree murder, but you may convict the defendant of voluntary manslaughter if the State proves that the defendant was simply the aggressor without murderous intent in bringing on the fight in which the deceased was killed or that the defendant used excessive force.

In the sentencing phase of the trial, the trial court found as an aggravating factor that the "offense was especially heinous, atrocious or cruel." Although the trial court found several mitigating factors, it did not find that the defendant suffered from a physical condition that reduced his culpability or that he acted under duress or coercion which significantly reduced his culpability.

The issues are whether: (I) the defendant's motion *in limine* properly preserved his objections to the testimony of Ila Martin, Jean Coffey, Mary Losee, Jennifer Smathers, and Pete Chambers when he did not object to this evidence at trial; (II) the evidence (the subject of the motion *in limine*) which was subsequently admitted at trial was properly admitted under (A) Rule 803(3), (B) Rule 804(b)(5), and (C) Rule 403; (III) the exclusion of the defendant's evidence that he loved Mrs. Hayes was prejudicial error; (IV) the defendant's right to be present at every stage in his trial was violated by his absence from several in-chambers conferences; (V) the trial court's instructions on self-defense were in error; and (VI) the trial court erred in not finding as mitigating factors that (A) the defendant suffered from a physical condition which reduced his culpability, and (B) the defendant acted under duress or coercion which significantly reduced his culpability.

I

Motion *in Limine*

The use of motions *in limine* is well established in North Carolina, although not specifically provided for in the Rules of Evidence. *T&T Development Co. v. Southern Nat. Bank of S.C.*, 125 N.C. App. 600, 602, 481 S.E.2d 347, 348-49, *disc. review denied*, 346 N.C. 185, 486 S.E.2d 219 (1997). "A motion *in limine* is, by definition, a motion made '[o]n or at the threshold; at the very beginning; preliminarily.'" *State v. Tate*, 300 N.C. 180, 182, 265 S.E.2d 223, 225 (1980) (quoting *Black's Law Dictionary* 708 (5th ed. 1979)). "These motions can be made in order to prevent the jury from ever hearing the potentially prejudicial evidence thus obviating the necessity for an instruction during trial to disregard that evidence if it comes in and is prejudicial." *Id.* Indeed "[p]re-trial motions are useful tools to resolve issues which would otherwise 'clutter up' the trial. Such motions reduce the need for sidebar conferences and argument outside the hearing of the jury, thereby saving jurors' time and eliminating distractions." *Palmerin v. City of Riverside*, 794 F.2d 1409, 1413 (9th Cir. 1986); *see* N.C.G.S. ch. 15A, art. 53 official commentary (1997) (pre-trial motions to suppress evidence "minimize interruptions during trial").

There exists in our state case law stating that an objection to an order denying a motion *in limine* "is insufficient to preserve for appeal the question of the admissibility of evidence," *State v. Conaway*, 339 N.C. 487, 521, 453 S.E.2d 824, 845, *cert. denied*, 516

U.S. 884, 133 L. Ed. 2d 153 (1995), as a party is required to object to the evidence "at the time it is offered at trial" in order to preserve the evidentiary issue for appeal, *id.*; *see State v. Wilson*, 289 N.C. 531, 537, 223 S.E.2d 311, 314-15 (1976); *Beaver v. Hampton*, 106 N.C. App. 172, 176-77, 416 S.E.2d 8, 11 (1992), *aff'd in part, vacated in part on other grounds*, 333 N.C. 455, 427 S.E.2d 317 (1993). Read in the context of the facts presented in these cases, our courts have held that the denial of a motion *in limine* is not sufficient to preserve an objection at trial to the introduction of the evidence which is the subject of the motion when the trial court has not heard the evidence. *See Wilson*, 289 N.C. at 535, 223 S.E.2d at 314 (trial court heard no evidence at defendant's pre-trial motion to suppress); *see also Beaver*, 106 N.C. App. at 177, 416 S.E.2d at 11 (trial court "did not conduct a full hearing of the evidentiary matters underlying the motion *in limine*").[2]

**[1]** Other courts that have addressed this issue have held that if the substance of the objection has been thoroughly explored during the hearing on the motion *in limine*, the order is explicit and definitive, the evidence actually offered at trial is substantially consistent with the evidence explored at the hearing on the motion, and there is no suggestion that the trial court would reconsider the matter at trial, an objection to the denial of the motion *in limine* is alone sufficient to preserve the evidentiary issues for review by the appellate court. *See Palmerin*, 794 F.2d at 1412-13; *see also American Home Assur. v. Sunshine Supermarket*, 753 F.2d 321, 324-25 (3d Cir. 1985); 21 Charles A. Wright and Kenneth W. Graham, *Federal Practice and Procedure* § 5037 (1977) ("If a ruling is made at the [pre-trial] stage, it is 'timely' and there is no need to renew the objection at trial."); *but see Collins v. Wayne Corp.*, 621 F.2d 777, 784 (5th Cir. 1980) (holding that "a party whose motion *in limine* has been overruled must object when the error he sought to prevent" with the motion *in limine* is about to occur at trial in order to preserve the error for appellate review). The *Palmerin* Court stated in part:

---

2. We acknowledge that our Supreme Court has very recently reaffirmed the general rule that "[a] motion *in limine* is insufficient to preserve for appeal the question of the admissibility of evidence if the [movant] fails to further object to that evidence at the time it is offered at trial." *Martin v. Benson*, 348 N.C. 684, 685, —— S.E.2d ——, ——, slip op. at 3 (No. 119A97, filed 9 July 1998) (quoting *Conaway*, 339 N.C. at 521, 453 S.E.2d at 845-46). We cannot discern from that opinion or the opinion issued by this Court, *Martin v. Benson*, 125 N.C. App. 330, 481 S.E.2d 292 (1997), *rev'd*, 348 N.C. 684, —— S.E.2d ——, slip op. (No. 119A97, filed 9 July 1998), the extent of the hearing conducted by the trial court in response to the motion *in limine* and thus do not read that opinion to preclude the holding we reach in this case.

**STATE v. HAYES**

[130 N.C. App. 154 (1998)]

> To require invariably a contemporaneous objection [at trial] after
> a rejected *in limine* motion . . . would exalt the form of timely
> objection over the substance of whether a proper objection has
> been made and considered by the trial court. We, therefore, reject
> an invariable requirement that an objection that is the subject of
> an unsuccessful motion *in limine* be renewed at trial.

*Palmerin*, 794 F.2d at 1413 (emphasis added). We agree with the rea-
soning and the holding of the *Palmerin* Court and find it consistent
with our case law. *See State v. Mems*, 281 N.C. 658, 666-67, 190 S.E.2d
164, 170 (1972) (ruling by trial court, after conducting a voir dire
examination, denying defendant's request that in-court identification
testimony be excluded, could be addressed on appeal even though
defendant did not actually object to identification testimony as it was
presented to the jury); 1 Kenneth S. Broun, *Brandis & Broun on
North Carolina Evidence* § 16 (4th ed. 1993) ("When the motion is
denied before trial, objection to the evidence or renewal of the
motion at trial would not be improper and may be the better practice
though it should hardly be necessary."). Furthermore, such a holding
is consistent with our statutes permitting a criminal defendant to
appeal the denial of his pre-trial motion to suppress after the entry of
a judgment of conviction. N.C.G.S. § 15A-979(b) (1997). We accord-
ingly hold that if: (1) there has been a full evidentiary hearing where
the substance of the objection(s) raised by the motion *in limine* has
been thoroughly explored; (2) the order denying the motion is
explicit and definitive; (3) the evidence actually offered at trial is sub-
stantially consistent with the evidence explored at the hearing on the
motion; and (4) there is no suggestion that the trial court would
reconsider the matter at trial, an objection[3] to the denial of the
motion *in limine* is alone sufficient to preserve the evidentiary
issues which were the subject of the motion *in limine* for review by
the appellate court.

[2] In this case, there was, at the pre-trial hearing, a thorough explo-
ration of the evidence that was the subject of the motion *in limine*.
The order of the trial court was explicit and definitive in addressing
the evidentiary questions raised by the motion. There was also no
suggestion in the order of the trial court that it would reconsider the

---

3. It is not necessary that the defendant actually enter, into the record, a formal
objection to the denial of his motion *in limine*, as an objection is deemed entered.
N.C.G.S. § 8C-1, Rule 103(a)(1) (1992).

**STATE v. HAYES**

[130 N.C. App. 154 (1998)]

matter at trial.[4] Finally, our review of the evidence offered at the pre-trial hearing and the evidence offered at the trial reveals no substantial inconsistency. Accordingly, the failure of the defendant to object[5] to the evidence offered during the trial, which had been declared by the trial court at the pre-trial hearing to be admissible, does not constitute a waiver of his right to raise those issues on appeal and we address those issues.

We do not address the defendant's assignment of error relating to Ms. Coffey's testimony that Mrs. Hayes told her that she was afraid of the defendant and that he was extremely "physically and verbally abusive." We do not address this issue because the trial court did not determine the admissibility of this evidence at the conclusion of the hearing on the motion *in limine* (the matter was deferred until the trial) and the defendant did not object to this evidence when it was offered at trial. The trial court also did not determine, at the hearing on the motion *in limine*, the admissibility of Ms. Smathers' testimony. Although the trial court did later conduct a pre-trial *voir dire* hearing on the admissibility of her testimony, we are unable to locate any place in this record (and the defendant does not direct our attention to any place) where the trial court entered a ruling. Thus, because there was no definitive and explicit pre-trial order excluding the evidence (providing a basis for the exclusion), the defendant's failure to object to her testimony at trial precludes the appeal of that issue to this Court.

II

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," N.C.G.S. § 8C-1, Rule 801(c) (1992), and "is not admissible except as provided by statute or by the North Carolina Rules of Evidence," *State v. Wilson*, 322 N.C. 117, 131-32, 367 S.E.2d 589, 598 (1988).

---

4. The trial court did state that it reserved the right to reconsider its rulings in certain situations. There is no indication in this record that any of those situations were presented during the trial.

5. We note that the defendant did, after the State had completed the presentation of its evidence and during the defendant's offer of evidence, address the trial court: "With regard to [the hearsay evidence which had been previously admitted] I want to make sure I'm preserving those, and I didn't intend in any way to waive any objections I previously had. I didn't want to keep objecting after the Court had already ruled [at the pre-trial hearing on the motion *in limine*]." This conversation the defendant had with the trial court does not constitute an objection to the evidence which had previously been admitted.

STATE v. HAYES

[130 N.C. App. 154 (1998)]

A

### Rule 803(3)

[3] Rule 803(3) of the Rules of Evidence allows hearsay testimony into evidence if it tends to show the victim's then existing state of mind, *State v. Bishop*, 346 N.C. 365, 379, 488 S.E.2d 769, 776 (1997), or "emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed," N.C.G.S. § 8C-1, Rule 803(3) (1992). Although statements which only relate factual events do not fall within the Rule 803(3) exception, *State v. Hardy*, 339 N.C. 207, 229, 451 S.E.2d 600, 612 (1994), statements relating factual events which tend to show the victim's state of mind, emotion, sensation, or physical condition when the victim made the statements are not excluded if the facts related by the victim serve to demonstrate the basis for the victim's state of mind, emotions, sensations, or physical condition, *State v. Gray*, 347 N.C. 143, 173, 491 S.E.2d 538, 550 (1997), *cert. denied,* —— U.S.——, 140 L. Ed. 2d 486 (1998).

In this case, Ms. Coffey, Ms. Losee, and Mr. Chambers were each allowed to testify about conversations they had with Mrs. Hayes where she told them of the defendant's threats to kill her, instances where he told her that she would be the next "Nicole Simpson," and that the defendant urinated on the kitchen floor and wiped her hair in the urine. In each instance the statements of Mrs. Hayes shed light on her state of mind, her emotions and her physical condition and we agree with the trial court that the evidence qualifies under Rule 803(3).

B

### Rule 804(b)(5)

[4],[5] The trial court found as admissible under Rule 804(b)(5) the following testimony: (1) the testimony of Mrs. Martin that Mrs. Hayes had told her that "she had run into the defendant's fist," and (2) the statements that Mrs. Hayes made to Ms. Losee in the fall of 1991 about the verbal and physical abuse she was receiving from the defendant. The defendant argues that this testimony does not qualify for admission under Rule 804(b)(5) because the trial court relied on corroborating evidence and further because it does not possess guarantees of trustworthiness. We disagree.

Before admitting evidence under Rule 804(b)(5) the trial court must, among other things not at issue in this appeal, "include in the record [its] findings of fact and conclusions of law that the statement possesses 'equivalent circumstantial guarantee of trustworthiness.' " *State v. Triplett*, 316 N.C. 1, 9, 340 S.E.2d 736, 741 (1986) (quoting N.C.G.S. § 8C-1, Rule 804(b)(5)). In deciding whether the statements possess "circumstantial guarantees of trustworthiness" a trial court must consider:

> (1) assurances of the declarant's personal knowledge of the underlying events, (2) the declarant's motivation to speak the truth or otherwise, (3) whether the declarant has ever recanted the statement, and (4) the practical availability of the declarant at trial for meaningful cross-examination . . . [a]lso pertinent to this inquiry are factors such as the nature and character of the statement and the relationship of the parties.

*Id.* at 10-11, 340 S.E.2d at 742. This Court is bound by the findings of fact of the trial court if they are supported by competent evidence. *State v. Brown*, 339 N.C. 426, 438, 451 S.E.2d 181, 189 (1994), *cert. denied*, 516 U.S. 825, 133 L. Ed. 2d 46 (1995). In addition to the *Triplett* test, the hearsay statements must also not violate the Confrontation Clause of the Sixth Amendment. *Id.* Rule 804(b)(5) is a residual hearsay exception which does not qualify as a firmly rooted hearsay exception and therefore will violate the Confrontation Clause unless it is "supported by a showing of particularized guarantees of trustworthiness." *Id.* The guarantees come from the " 'circumstances surrounding the making of the statement,' taken as a whole, 'that render the declarant particularly worthy of belief.' " *Id.* at 438, 451 S.E.2d at 189 (quoting *Idaho v. Wright*, 497 U.S. 805, 819, 111 L. Ed. 2d 638, 655 (1990)). "In other words, if the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility," then the hearsay would not be barred. *Wright*, 497 U.S. at 820, 111 L. Ed. 2d at 655. In making this determination, the trial court should consider the same four factors considered for the third prong of the *Triplett* test stated above. *State v. Downey*, 127 N.C. App. 167, 170, 487 S.E.2d 831, 834 (1997). Corroborating evidence cannot be relied upon to find the circumstantial guarantees of trustworthiness required to protect the defendant's rights under the Confrontation Clause. *Id.*

**[6]** In this case, the trial court determined that the testimony in question possessed circumstantial guarantees of trustworthiness. This determination is supported by the evidence in the record. As to the

testimony of Mrs. Martin: Mrs. Martin and Mrs. Hayes were friends who socialized with other friends and at their country club with their husbands; Mrs. Hayes never recanted the statement she made nor did she have any reason to lie about the statement because she knew that Mrs. Martin was familiar with the volatile relationship between Mrs. Hayes and the defendant; and Mrs. Hayes had not sought legal advice from her attorney at the time she made the statements. As to the testimony of Ms. Losee: Mrs. Hayes was motivated to speak the truth to Ms. Losee, her dance instructor and friend; Mrs. Hayes did not recant the statement; and Mrs. Hayes' statements were inconsistent with a calculated approach to create a pattern of abuse that may support domestic litigation.

We are aware that the trial court in each instance (Ms. Losee and Mrs. Martin) makes findings indicating that it considered corroborative evidence to support its ruling under 804(b)(5). This was error. Because, however, the determination of trustworthiness is fully supported by the other findings in this record (not based on corroborative evidence), the order must be affirmed as the error is considered harmless beyond a reasonable doubt. *See State v. Tyler*, 346 N.C. 187, 202-03, 485 S.E.2d 599, 607, *cert. denied*, —— U.S. ——, 139 L. Ed. 2d 411 (1997); N.C.G.S. § 15A-1443(b) (1997).

## C

### Rule 403

Qualification of the testimony under a hearsay exception does not itself justify admitting the testimony into evidence, as the evidence must also be found to be more probative than prejudicial. *See Griffin v. Griffin*, 81 N.C. App. 665, 669, 344 S.E.2d 828, 831 (1986); N.C.G.S. § 8C-1, Rule 403 (evidence must be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice"). Whether or not evidence should be excluded pursuant to Rule 403 is a matter within the discretion of the trial court and that ruling may be reversed only upon a showing that it was arbitrary to the extent it could not be based on a reasoned decision. *State v. Jones*, 89 N.C. App. 584, 594, 367 S.E.2d 139, 145 (1988).

In this case, the trial court in each instance of contested evidence determined that the evidence was more probative than prejudicial. We discern no abuse of discretion by the trial court. *See State v. Scott*, 343 N.C. 313, 335, 471 S.E.2d 605, 618 (1996) (murder victim's statements falling within 803(3) hearsay exception are relevant to show status of the victim's relationship with the defendant).

III

[7] The defendant contends that the trial court erred by not allowing evidence that he loved Mrs. Hayes because this evidence falls within Rule 803(3), the then-existing emotion or state of mind exception to the hearsay rule.

Assuming the correctness of the defendant's argument, the defendant has failed to demonstrate that a reasonable possibility exists that a different verdict would have been reached had the excluded evidence been admitted. N.C.G.S. § 15A-1443(a) (1997). The statement was made approximately eight years before the defendant killed Mrs. Hayes and did not shed any light on his feelings for her at the time of her death. Moreover, the trial court allowed other evidence which showed that the defendant provided for all of Mrs. Hayes' needs, was concerned about her health, did not threaten her even if she provoked him, and treated her well.

IV

In-Chambers Conferences

[8] Our State Constitution provides that "[i]n all criminal prosecutions, every person charged with crime has the right . . . to confront the accusers and witnesses with other testimony . . . ." N.C. Const. art. I, § 23. While the confrontation clause of the United States Constitution has been interpreted to mean that criminal defendants have the right to be present at "*all critical stages* of the trial," *Rushen v. Spain*, 464 U.S. 114, 117, 78 L. Ed. 2d 267, 272 (1983) (emphasis added), our State confrontation clause has been interpreted broadly and guarantees the rights of the "accused to be present at *every stage* of his trial," *State v. Huff*, 325 N.C. 1, 29, 381 S.E.2d 635, 651 (1989), *sentence vacated on other grounds*, 497 U.S. 1021, 111 L. Ed. 2d 777 (1990), including pre-trial hearings on motions *in limine*, *see State v. Braswell*, 312 N.C. 553, 558, 324 S.E.2d 241, 246 (1985), and any in-chambers conferences related to either the trial or the motion *in limine*; *State v. Exum*, 343 N.C. 291, 294, 470 S.E.2d 333, 335 (1996), provided "anything is done or said affecting [the defendant] as to the charge against him . . . in any material respect," *State v. Brogden*, 329 N.C. 534, 541, 407 S.E.2d 158, 163 (1991) (quoting *State v. Kelly*, 97 N.C. 404, 405, 2 S.E. 185, 185-86 (1887)). The defendant's right to be present at his capital trial, motions *in limine* related to that trial, or in-chambers conferences related to those proceedings, "cannot be waived" and the trial court has an affirmative duty to "insure the

defendant's presence" at these proceedings. *See Huff*, 325 N.C. at 31, 381 S.E.2d at 652. The defendant's right to be present at non-capital trials and related proceedings can be waived. *Braswell*, 312 N.C. at 559, 324 S.E.2d at 246.

The defendant's absence from some part of a capital trial to which he is entitled to be present, however, "does not require automatic reversal." *Brogden*, 329 N.C. at 541, 407 S.E.2d at 163. A new trial is not required if the State can show that the error is harmless beyond a reasonable doubt. *Id.*; N.C.G.S. § 15A-1443(b) (State has burden because error is of constitutional dimensions). Even though an in-chambers conference is not recorded, if the "nature and content of the private discussion" can be gleaned from the record, for example by a subsequent recordation by the trial court of the substance of the in-chambers conference, the reviewing court may review that record and determine if the defendant was prejudiced by his absence. *Exum*, 343 N.C. at 295-96, 470 S.E.2d at 335.

After the first in-chambers conference the trial court indicated for the record that the issue discussed in-chambers related to the confidentiality of Mr. Diehl's records and his availability as a witness. This discussion did not relate to the charges against the defendant and his absence was harmless error. In any event, the trial court ordered these records be shared with both the State and the defendant in this case and the defendant called Mr. Diehl as a witness and examined him about these documents.

With respect to the second in-chambers conference, the record reveals that the trial court, in-chambers, allowed the defendant's request to record the trial in its entirety and discussed with the attorneys the possible sequestration of certain witnesses. These discussions do not relate in any material aspect to the charges pending against the defendant and his absence from the conference was harmless error. *See Brogden*, 329 N.C. at 541, 407 S.E.2d at 162-63 (in-chambers charge conference conducted outside the presence of defendant does not constitute prejudicial error).

The third in-chambers conference contested by the defendant does not appear to even involve an actual in-chambers conference. The record reveals only that the trial court invited the defendant's attorney to the bench to look at certain photographs. After this occurred, the attorneys, without the presence of the judge, conferred in another room. Thus the record reveals no in-chambers conference,

as such a conference necessarily involves the trial judge. To the extent there was a bench conference conducted without the presence of the defendant, the defendant has not shown that his presence would have been useful. *State v. Buchanan*, 330 N.C. 202, 223-24, 410 S.E.2d 832, 845 (1991) (defendant has burden to show that his presence at bench conference would have been useful; otherwise, no error to have conference without defendant's presence). It thus follows that the bench conference conducted without the defendant was not error.

At the fourth in-chambers conference the attorneys and the judge discussed the identification and presentation of certain medical records. Again these are not matters affecting in any material aspect the charges against the defendant and therefore his absence from the conference was harmless error. The fifth in-chambers conference, as indicated from the statements made by the trial court after that conference, reveal a discussion of the same issues discussed at the fourth in-chambers conference. Thus the defendant's absence was harmless error.

The sixth in-chambers conference, as revealed from the comments placed in the record by the trial court, show a discussion to determine if "there were any other matters . . . that . . . needed" to be addressed before continuing with the trial on the next day. The trial court noted "there is nothing that we need to do." Again, for the reasons previously given, the error committed by not inviting the defendant to the conference was harmless.

V

Self-Defense Instruction

**[9]** A trial court is required to comprehensively instruct the jury on a defense to the charged crime when the evidence viewed in the light most favorable to the defendant reveals substantial evidence of each element of the defense. *See State v. Roten*, 115 N.C. App. 118, 122, 443 S.E.2d 794, 796 (1994); *State v. Brown*, 117 N.C. App. 239, 241, 450 S.E.2d 538, 540 (1994), *disc. review denied*, 340 N.C. 115, 456 S.E.2d 320 (1995).

The law of perfect self-defense completely excuses a killing if four elements are satisfied:

(1) it appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great

bodily harm; and (2) defendant's belief was reasonable in that the circumstances as they appeared to him at the time were sufficient to create such a belief in the mind of a person of ordinary firmness; and (3) defendant was not the aggressor in bringing on the affray, . . . ; and (4) defendant did not use excessive force . . . .

*State v. Wilson*, 304 N.C. 689, 694-95, 285 S.E.2d 804, 807 (1982) (quoting *State v. Norris*, 303 N.C. 526, 530, 279 S.E.2d 570, 572-73 (1981)). If the first two elements of the defense are satisfied and elements (3) or (4) are not shown, the defendant is not completely excused from the killing and "is guilty at least of voluntary manslaughter." *Id.* at 695, 804 S.E.2d at 808. This latter situation is known as imperfect self-defense. *Id.*

The defense of self-defense is not, however, limited to those situations where the defendant kills another person after being threatened with death or great bodily harm. Self-defense also applies to excuse a defendant's assault of another, "even though he is not . . . put in actual or apparent danger of death or great bodily harm." *State v. Anderson*, 230 N.C. 54, 56, 51 S.E.2d 895, 897 (1949). "If one is without fault in provoking, or engaging in, or continuing a difficulty with another, he is privileged by the law of self-defense to use such force against the other as is actually or reasonably necessary under the circumstances to protect himself from bodily injury or offensive physical contact at the hands of the other . . . ." *Id.* When confronted with an assault that does not threaten the person assaulted with death or great bodily harm, however, the person assaulted "may not stand his ground and kill his adversary, if there is any way of escape open to him, although he is permitted to repel force by force and give blow for blow." *State v. Pearson*, 288 N.C. 34, 39, 215 S.E.2d 598, 602-03 (1975); *Anderson*, 230 N.C. at 56, 51 S.E.2d at 897. There is no duty to retreat when (1) the person assaulted is confronted with an assault that threatens death or great bodily harm or (2) the person assaulted is not confronted with an assault that threatens death or great bodily harm and the assault occurs in the dwelling, place of business, or premises of the person assaulted, provided the person assaulted is free from fault in bringing on the difficulty. *Pearson*, 288 N.C. at 39-40, 215 S.E.2d at 603.

In this case, the defendant argues that because Mrs. Hayes attacked him in his own home the jury was entitled to know that in evaluating his belief that he needed to kill her to protect himself, he had no duty to retreat. It is true that a jury is entitled to have this

information, but only when there is substantial evidence that the defendant, asserting self-defense, has a reasonable belief that the killing is necessary to protect himself from death, great bodily harm, or some less serious bodily harm. In this case, there simply is not substantial evidence to create a reasonable belief in the mind of a person of ordinary firmness that killing Mrs. Hayes was necessary to save the defendant from death, great bodily harm, or some less serious bodily injury. This is assuming that the defendant had the right to stand his ground and had no duty to retreat. The defendant, approximately sixty years old, was assaulted by Mrs. Hayes in the garage of their home. She threw a hammer at him, striking him on the leg. She kicked him and attempted to hit him with a baseball bat. The defendant wrestled the bat from her and only after obtaining sole possession of the bat did he proceed to strike her multiple times about her body with the bat causing her death. There is no evidence in this record that shows that Mrs. Hayes presented any threat to the defendant after he acquired the bat from her. Although the initial assaults by Mrs. Hayes justified defensive action by the defendant, after the bat was obtained by the defendant, there is no evidence from which a reasonable jury could conclude that killing Mrs. Hayes was necessary in order to protect the defendant. *See Wilson*, 304 N.C. at 695, 285 S.E.2d at 807. Therefore, the defendant was not entitled to *any* instruction on self-defense and any error in the instruction given is therefore harmless.

## VI

### Sentencing

"Under the Fair Sentencing Act, a trial court must find a statutory mitigating factor if that factor is supported by uncontradicted, substantial, and manifestly credible evidence." *State v. Brewington*, 343 N.C. 448, 456, 471 S.E.2d 398, 403 (1996). "In order to show that the trial court erred in failing to find a mitigating factor, the defendant has the burden of showing that no other reasonable inferences can be drawn from the evidence," *id.* at 456-57, 471 S.E.2d at 403, and establishing the mitigating factor by a preponderance of the evidence, *State v. Jones*, 309 N.C. 214, 219, 306 S.E.2d 451, 455 (1983). Evidence that a physical condition exists is not enough to establish a mitigating factor and the defendant must establish a link between his condition and his culpability. *State v. Salters*, 65 N.C. App. 31, 36, 308 S.E.2d 512, 516 (1983), *disc. review denied*, 310 N.C. 479, 312 S.E.2d 889 (1984). A mitigating factor such as duress implies some type of

STATE v. HAYES

[130 N.C. App. 154 (1998)]

external pressure which is "directly exerted upon the defendant in an attempt to force commission of the offense." *State v. Holden*, 321 N.C. 689, 695, 365 S.E.2d 626, 629 (1988). Internal psychological forces can be caused by external factors such as emotional and physical abuse; however, to find duress, the external factors must force the defendant to commit the crime. *Id.*

A

**[10]** In this case, the defendant claims that his recent cancer surgery reduced his culpability for the murder. Although the defendant contends that the "recent surgery made him more vulnerable to a physical attack," he does not establish a link between his illness and his culpability by demonstrating how or why the illness reduced his culpability for killing his wife. As a result, this argument is unpersuasive.

B

**[11]** The defendant also contends that the trial court should have found as a mitigating factor that the defendant acted under duress in killing Mrs. Hayes. We disagree. The defendant did present evidence of Mrs. Hayes' infidelity, her attempt to remove a large sum of money from the defendant's bank account, and her attempt to attack him in the garage. This evidence, however, does not establish that the defendant was under duress and forced to do some act that he otherwise would not have committed. *See Black's Law Dictionary* 504 (6th ed. 1990) (duress is defined as "unlawful threat or coercion used by a person to induce another to act . . . in a manner he or she otherwise would not"). There was no unlawful threat or coercion placed upon the defendant forcing him to kill his wife. This argument is therefore unpersuasive.

No Error.

Judges WALKER and TIMMONS-GOODSON concur.