IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA19-847

 Filed: 20 October 2020

Yadkin County, No. 17CRS050312-15, 18CRS000019

STATE OF NORTH CAROLINA

 v.

CHRISTOPHER ISSAC ALEXANDER, Defendant.

 Appeal by Defendant from judgments entered 20 March 2019 by Judge Julia

Lynn Gullett in Yadkin County Superior Court. Heard in the Court of Appeals 11

August 2020.

 Attorney General Joshua H. Stein, by Assistant Attorney General Nicholas R.
 Sanders, for the State.

 Daniel J. Dolan for Defendant-Appellant.

 INMAN, Judge.

 Defendant, who is Black, challenged during his criminal trial a prosecutor’s

peremptory strike of the only Black juror in the venire as racially motivated and

prohibited by Batson v. Kentucky, 476 U.S. 79, 90 L. Ed. 2d 69 (1986). Though the

trial court heard thorough arguments and announced findings of fact and conclusions

of law to support its ruling, it did not make a record adequately addressing the

totality of circumstances presented to it as required by recent clarifying caselaw. As
 STATE V. ALEXANDER

 Opinion of the Court

a result, we remand the matter for further proceedings addressing Defendant’s

Batson claim.

 We also vacate three of the judgments to correct an error in the assessment of

costs, and remand for the entry of judgments without costs should Defendant’s Batson

claim fail on remand.

 I. FACTUAL AND PROCEDURAL HISTORY

 Defendant was arrested in February 2017 on eight drug charges. The State’s

evidence at trial tended to show that Defendant sold cocaine to an undercover Yadkin

County law enforcement officer on at least four different occasions during April and

May of 2015.

 In January of 2018, Defendant was indicted by a grand jury on four counts of

possession with intent to sell and deliver cocaine, four counts of selling and delivering

cocaine, and one charge of attaining habitual felon status. The State filed a motion

to join all the charges for trial on 5 July 2018, averring that “the offenses are based

on the same act or transaction or on a series of acts or transactions connected together

or constituting parts of a single scheme or plan.” The trial court granted that motion

without objection from Defendant during the pretrial motions hearing on 18 March

2019. Defendant pled not guilty to all charges, and the case proceeded to trial later

that day.

 -2-
 STATE V. ALEXANDER

 Opinion of the Court

 Defendant is Black. Of the 34 people in the pool of prospective jurors, only one

person, Mr. Robinson,1 was Black. Jury selection was not transcribed, and no jurors

were polled on their race or ethnicity.

 Mr. Robinson was questioned after the State had accepted ten jurors and had

stricken two jurors peremptorily. During voir dire, Mr. Robinson discussed his

employment history and current employment status, his wife’s classes from an online

university that he could not identify, and a prior criminal charge for child abuse that

was dismissed without a conviction. The prosecutor used a peremptory strike on Mr.

Robinson. Defendant objected on Batson grounds.

 In a hearing outside the presence of the jury, Defendant’s counsel asserted that

the State’s decision to strike the only Black prospective juror in the trial of a Black

defendant constituted a prima facie showing of racial discrimination in jury selection

under Batson. The State did not challenge Defendant’s characterization of Mr.

Robinson as Black, nor his assertion that a prima facie case of discrimination had

been made. Instead, the prosecutor offered several “race neutral options or the reason

[he] struck him.”

 The prosecutor noted Mr. Robinson’s “tone of voice” and the “context” of his

statements about his job history, which led the prosecutor to surmise that Mr.

Robinson had been fired but “was reluctant to talk about it.” Though the prosecutor

 1 The trial transcript refers to Mr. Robinson as both “Shane Robinson” and “Sean Robinson” at
different times. We refer to him by his last name throughout the opinion for ease of reading.

 -3-
 STATE V. ALEXANDER

 Opinion of the Court

could have confirmed this hunch through further questioning, he explained to the

trial court that he declined to do so because he “didn’t want to embarrass” Mr.

Robinson. The prosecutor also “found troubling” Mr. Robinson’s statement that he

had been unemployed for a year, making him “the only juror we talked to so far that

did not have a legitimate basis of employment and certainly the longest period of

anybody we’ve talked to.” The prosecutor said he was further concerned by Mr.

Robinson’s inability to identify which university his wife attended online. He then

summarized his rationale:

 [T]he gentleman struck me as someone who was just not a
 reasonable citizen basically. He has no job, he has no idea
 what his wife was doing, [the prosecutor] found him
 credible on his allegation of child abuse, [which was] the
 most serious criminal act that we’ve really dealt with any
 specificity from anybody on the panel.

 Defendant argued that the State’s proffered reasons for the peremptory strike

were pretextual. He pointed out that Mr. Robinson had described “some type of

deferred prosecution,” and that the State had accepted a white juror who had a

previous marijuana possession charge resolved through a deferred prosecution. He

also disagreed with the State’s characterization of Mr. Robinson’s testimony,

contending that Mr. Robinson said he was employed.2 Further, Defendant argued

 2 Defendant contends on appeal that the prosecutor misrepresented that Mr. Robinson was
unemployed. We are unable to entertain this contention; both Defendant and the State presented
their differing recollections of Mr. Robinson’s testimony to the trial court, and it resolved this factual
issue by finding as a fact that he said he “has been out of work for a year.” Without a transcript of voir
dire, we are bound to leave that factual determination by the trial court undisturbed.

 -4-
 STATE V. ALEXANDER

 Opinion of the Court

that the prosecutor’s statements about Mr. Robinson’s “tone of voice . . . may show

some racial issues.”

 The prosecutor acknowledged the white juror’s criminal history, but asserted

that “he said he felt he had been treated fairly and implicitly admitted his guilt in

that crime, and [the prosecutor] didn’t get kind of the same reaction from Mr.

Robinson which was the distinction there.” Defendant then pointed out that “Mr.

Robinson stated he felt like he was treated fairly and . . . you have two jurors that

have some type of criminal history, it sounds like they both were deferred proceedings

that were later dismissed. They both stated that they felt that they had been treated

fairly.” Defendant also noted that, like his case, the white juror’s “criminal problems

or issues actually dealt with drugs, so . . . that makes it even stronger as far as our

argument is concerned.”

 The trial court found that Defendant did not prove purposeful discrimination

and overruled his Batson objection. The trial court explained from the bench that it

had heard all three steps of Defendant’s Batson challenge before making the following

oral ruling:

 THE COURT: The Court has observed the manner and
 appearance of counsel and jurors during voir dire and has
 made all relevant determinations of credibility for
 purposes of this order.

 In making these findings of fact, the Court has made
 determinations as to the race of various individuals. As to
 the jurors, any findings of race are based upon

 -5-
 STATE V. ALEXANDER

 Opinion of the Court

representations during the arguments of attorneys.

....

The Court finds that as to parties, lawyers, witness’s
finding of race are based upon statements of counsel. The
Court finds that the Defendant in this case is black.

....

[I]t appears that there was only one person of the African-
American race on the jury in the jury pool to the best of the
Court’s determination.

The Court finds that the only potential juror in the pool
that appeared to be African-American was juror number
11, Mr. Sean Robinson.

The Court finds that upon questioning juror number 11,
that the prosecutor elicited that juror number 11 worked
at Lydall, until he had to make other arrangements and
has been out of work for a year. That his wife was in school.
That she was attending school on the computer. That he
did not have any idea of what school she was attending.
That the prosecutor found him credible on the child-abuse
allegations, but that the prosecutor was troubled
concerning his employment history and the fact that he
had no idea where his wife was attending school or what
school she was attending. The defense is concerned
because this was the only African-American or appeared to
be the only African-American person in the jury pool which
would effectively be a 100 percent rejection rate of African-
American jurors.

....

The Court finds that the State has used a disproportionate
number of preemptory challenges to strike African-
American jurors in this case, and that on its face, the
State’s acceptance rate of potential African-American

 -6-
 STATE V. ALEXANDER

 Opinion of the Court

jurors indicates the likelihood of discrimination in the jury
selection process. So the Defendant would’ve made a prima
facie showing based upon the percentage.

Upon the establishment of a prima facie showing of
discrimination, the Court considers the racially neutral
reasons offered by the State . . . . The reasons offered by
the State were the employment history of [Mr. Robinson]
and his answers and tone of voice concerning that history.
The fact that his wife was in college, that he had no idea
what school she was attending, and the troubling situation
with the child abuse issues, although the prosecutor found
them to be credible in his answers to that.

The Defendant was offered the opportunity to rebut those
reasons and indicated, again, that the 100 percent rejection
rate was troubling, and that another juror had previous
drug charges and that he was not excused.

The Court does find the prosecutor to be credible in stating
racially neutral reasons for the exercise of the [peremptory]
challenge. In response to such reasons, defense counsel
has not shown that the Prosecutor’s explanations are
[pretextual].

Based upon consideration of the presentations made by
both sides and taking into account the various arguments
presented, the Defendant has not proven purposeful
discrimination in the jury selection process.

Based on the foregoing findings of fact, the Court concludes
as a matter of law that because the Defendant may have a
prima facie showing in the selection process, . . . and that
the reasons that the prosecutor stated were racially
neutral, and the Court does find the Prosecutor to be
credible in those reasonings.

So taken in the totality in connection with all the findings
of fact, the Court does find that he had a . . . sufficient
racially neutral basis for the exercise of a [peremptory]

 -7-
 STATE V. ALEXANDER

 Opinion of the Court

 challenge[] as to that juror. Therefore, the objection to the
 State’s exercise of [peremptory] challenge as to potential
 juror number 11, Mr. Robinson . . . is overruled and the
 [peremptory] challenge is allowed.

 Jury selection then resumed. The jury ultimately convicted Defendant on all

counts, and the trial judge imposed four consecutive judgments, assessing costs in

each. Defendant appeals.

 II. ANALYSIS

 Defendant presents two principal arguments on appeal: (1) the trial court erred

in denying his Batson challenge or, in the alternative, failed to make adequate

findings of fact under the totality of the circumstances as explained in State v. Hobbs,

374 N.C. 345, 841 S.E.2d 492 (2020); and (2) the trial court violated N.C. Gen. Stat. §

7A-304 in assessing costs in each of the four judgments rather than only once

consistent with State v. Rieger, ___ N.C. App. ___, 833 S.E.2d 699 (2019). The State,

in addition to addressing Defendant’s first argument on the merits, contends that he

failed to adequately preserve his Batson challenge for review. As to the second

argument, the State recognizes that the underlying rationale of Rieger may require

vacatur of the judgments for a single imposition of costs. We address each line of

inquiry in turn.

A. Standards of Review

 In evaluating a Batson challenge, “[t]he trial court has the ultimate

responsibility of determining whether the defendant has satisfied his burden of

 -8-
 STATE V. ALEXANDER

 Opinion of the Court

proving purposeful discrimination.” Hobbs, 374 N.C. at 349, 841 S.E.2d at 497

(citations and quotation marks omitted). Such a determination is afforded “great

deference” on appeal, State v. Golphin, 352 N.C. 364, 427, 533 S.E.2d 168, 211 (2000)

(citations omitted), with reviewing courts “overturning it only if it is clearly

erroneous.” Hobbs, 374 N.C. at 349, 841 S.E.2d at 497 (citation omitted). Trial courts

faced with resolving a Batson claim “must make specific findings of fact at each stage

of the Batson inquiry that it reaches” in aid of the standard’s application upon

appellate review. State v. Headen, 206 N.C. App. 109, 114, 697 S.E.2d 407, 412 (2010)

(citation and quotation marks omitted).

 Alleged statutory violations are, by contrast, subject to no deference

whatsoever. State v. Johnson, 253 N.C. App. 337, 345, 801 S.E.2d 123, 129 (2017).

“Alleged statutory errors are questions of law and as such, are reviewed de novo.”

State v. Mackey, 209 N.C. App. 116, 120, 708 S.E.2d 719, 721 (2011) (internal citations

omitted). We therefore analyze Defendant’s argument that the trial court failed to

comply with N.C. Gen. Stat. § 7A-304 in its imposition of costs by “considering the

matter anew and freely substituting our own judgment for that of the trial court.”

State v. Edgerton, ___ N.C. App. ___, ___, 832 S.E.2d 249, 253 (2019) (citation

omitted).

B. Preservation

 -9-
 STATE V. ALEXANDER

 Opinion of the Court

 The State contends in its principal brief that Defendant’s Batson challenge was

not preserved because: (1) the record does not disclose direct evidence of Mr.

Robinson’s race, and Defendant failed to “make a record which shows the race of a

challenged juror,” State v. Willis, 332 N.C. 151, 162, 420 S.E.2d 158, 162 (1992)

(citation omitted); and (2) jury selection was neither recorded nor reconstructed by a

narrative agreed upon by the parties, leaving us with only counsels’ descriptions of

voir dire, their Batson arguments, and the trial court’s examination of and ruling on

the same. Reviewing the record and recent caselaw, we disagree with the State on

both points and hold the record is “minimally sufficient to permit appellate review.”

State v. Campbell, ___ N.C. App. ___, ___, 846 S.E.2d 804, 807 (2020).

 The State correctly notes that the record does not contain direct evidence of

Mr. Robinson’s racial identity or the racial identity of other jurors. However, such

direct evidence is not strictly required where the record discloses “what amounts to a

stipulation of the racial identity of the relevant prospective jurors.” State v. Bennett,

374 N.C. 579, 595, 843 S.E.2d 222, 233 (2020).

 In Bennett, a defendant brought a Batson claim but did not establish the race

of the jurors struck by the State on the record through self-identification or other

direct evidence. Id. at 591, 843 S.E.2d at 231. What the record did reveal, however,

was an agreement between the State, defendant’s counsel, and the trial court that

the challenged jurors were Black. Id. at 594, 843 S.E.2d at 233. Our Supreme Court

 - 10 -
 STATE V. ALEXANDER

 Opinion of the Court

held that this agreement was sufficient to permit appellate review because “the

record reveals the complete absence of any dispute among counsel for the parties and

the trial court concerning the racial identity of the persons who were questioned

during the jury selection process, . . . resulting in what amounts to a stipulation of

the racial identity of the relevant prospective jurors.” Id. (citations omitted). In

announcing its holding, the Supreme Court further explained that “[w]hile a

stipulation must be definite and certain in order to afford a basis for judicial decision,

stipulations and admissions may take a variety of forms and may be found by

implication.” Id. (emphasis added) (citations, alterations, and quotation marks

omitted). In doing so, it distinguished its earlier decisions in State v. Mitchell, 321

N.C. 650, 365 S.E.2d 554 (1988), State v. Payne, 327 N.C. 194, 394 S.E.2d 158 (1990),

and State v. Brogden, 329 N.C. 534, 407 S.E.2d 158 (1991), wherein defendants

unsuccessfully “attempted to establish the racial identities of each of the prospective

jurors on the basis of the subjective impressions of a limited number of trial

participants.” Bennett, 374 N.C. at 594, 843 S.E.2d at 233.

 Defendant’s counsel in this case opened his Batson argument by asserting that

“[a]s far as a prima facie case, . . . my client is African-American . . . . There was one

African-American that was on the jury pool; that juror was brought to the jury box,

and he was peremptorily challenged[.]” Rather than rebut Defendant’s prima facie

case—by, for example, arguing that Mr. Robinson was not Black or that there were

 - 11 -
 STATE V. ALEXANDER

 Opinion of the Court

other Black jurors passed by the State—the prosecutor apparently conceded the

question and instead proceeded to “offer . . . a race neutral . . . reason” for striking

Mr. Robinson. This absence of any dispute as to Mr. Robinson’s race (or whether any

other jurors were Black) continued through the parties’ additional arguments back

and forth, and was reflected in the trial court’s determination of Mr. Robinson’s race

from the bench:

 In making these findings of fact, the Court has made
 determinations as to the race of various individuals. As to
 the jurors, any findings of race are based upon
 representations during the arguments of attorneys.

 ....

 The Court finds that as to parties, lawyers, witness’s
 finding of race are based upon statements of counsel. The
 Court finds that the Defendant in this case is black.

 ....

 That as of the time that the State attempted to exercise
 this [peremptory] challenge, 10 jurors have been accepted
 by the State of which to the best of the Court’s
 determination 10 are white and zero are black. That as of
 the time the State attempted to exercise that [peremptory]
 challenge, the State had exercised two . . . [peremptory]
 challenges of which zero were persons of an African-
 American race.

 As a matter of fact, it appears that there was only one
 person of the African-American race on the jury in the jury
 pool to the best of the Court’s determination.

 - 12 -
 STATE V. ALEXANDER

 Opinion of the Court

 The Court finds that the only potential juror in the pool
 that appeared to be African-American was juror number
 11, Mr. Sean Robinson.

 We acknowledge that, unlike in Bennett, the prosecutor did not expressly state

Mr. Robinson’s race or the race of other jurors on the record below. This distinction

does not alter our holding that the parties effectively entered into a stipulation to

that effect. As recognized in Bennett, “stipulations and admissions may take a variety

of forms and may be found by implication.” 374 N.C. at 594, 843 S.E.2d at 233

(quotation marks and citations omitted). And, as the Supreme Court has elsewhere

observed, “[s]ilence, under some circumstances, may be deemed assent.” State v.

Alexander, 359 N.C. 824, 828, 616 S.E.2d 914, 917 (2005) (citations and quotation

marks omitted); see also State v. Hurley, 180 N.C. App. 680, 684, 637 S.E.2d 919, 923

(2006) (“Stipulations do not require affirmative statements and silence may be

deemed assent in some circumstances, particularly if the defendant had an

opportunity to object, yet failed to do so.” (citing Alexander, 359 N.C. at 828-29, 616

S.E.2d at 917-18)).3 Stated differently, because “the record reveals the complete

 3 We also note, as the Supreme Court did in Bennett, that the core inquiry in a Batson challenge
is “whether the prosecutor is excluding people from a jury because of their race,” Bennett, 374 N.C. at
596 n.4, 843 S.E.2d at 234 n.4 (emphasis added), suggesting that it is the prosecutor’s understanding
of the prospective juror’s race that ultimately matters for purposes of analysis. The prosecutor’s tacit
acknowledgment that the challenged juror was Black distinguishes this case from those in which the
record contained no indication of the prosecutor’s belief as to the prospective juror’s race. See Mitchell,
321 N.C. at 655-56, 365 S.E.2d at 557 (holding a court reporter’s notation as to prospective jurors’ races
would not create an adequate record for review because “[t]he court reporter . . . is in no better position
to determine the race of each prospective juror . . . . An individual’s race is not always easily
discernable, and the potential for error by a court reporter acting alone is great”); Payne, 327 N.C. at

 - 13 -
 STATE V. ALEXANDER

 Opinion of the Court

absence of any dispute among counsel for the parties and the trial court concerning

the racial identity of the persons who were questioned during the jury selection

process,” Bennett, 374 N.C. at 595, 843 S.E.2d at 233, Defendant’s failure to elicit

direct evidence of Mr. Robinson’s race or the race of other jurors does not preclude

our review.

 The lack of a verbatim transcript of voir dire also does not per se preclude

Batson review. State v. Sanders, 95 N.C. App. 494, 499, 383 S.E.2d 409, 412 (1989);

see also Campbell, ___ N.C. App. at ___, 846 S.E.2d at 807 (reviewing a Batson claim

absent a voir dire transcript). The transcript of the Batson hearing reflects the

following details: (1) Defendant’s race; (2) Mr. Robinson’s race; (3) the absence of any

other Black jurors in the jury pool; (4) the number of non-Black jurors passed by the

State and the number and percentage of peremptory challenges aimed at Black

jurors; (5) the State’s proffered reasons for striking Mr. Robinson; and (6) Defendant’s

arguments and evidence that those reasons revealed racial bias. We are therefore

satisfied that the record in this case suffices to permit appellate review.

C. Defendant’s Batson Challenge

 A Batson claim is resolved in three stages:

200, 394 S.E.2d at 161 (holding a defendant failed to establish the races of prospective jurors on the
record when the only evidence was an “affidavit . . . contain[ing] only the perceptions of one of the
defendant’s lawyers concerning the races of those excused” (citation omitted)); Brogden, 329 N.C. at
546, 407 S.E.2d at 166 (holding an affidavit disclosing defendant’s counsel’s impressions of jurors’ races
and notations in the record by the court reporter of her impressions was inadequate to establish a
reviewable record on appeal).

 - 14 -
 STATE V. ALEXANDER

 Opinion of the Court

 First, defendant must establish a prima facie case that the
 peremptory challenge was exercised on the basis of race.
 Second, if such a showing is made, the burden shifts to the
 prosecutor to offer a racially neutral explanation to rebut
 defendant’s prima facie case. Third, the trial court must
 determine whether the defendant has proven purposeful
 discrimination.

State v. Cummings, 346 N.C. 291, 307-08, 488 S.E.2d 550, 560 (1997) (citations

omitted). It is imperative that “the trial court . . . make specific findings of fact at

each stage of the Batson inquiry that it reaches.” State v. Cofield, 129 N.C. App. 268,

275, 498 S.E.2d 823, 829 (1998) (citation omitted).

 Our Supreme Court has recently explained what the third stage of a Batson

inquiry requires:

 “The trial court must consider the prosecutor’s race-neutral
 explanations in light of all of the relevant facts and
 circumstances, and in light of the arguments of the
 parties.” Flowers [v. Mississippi, ___ U.S. ___, ___, 204 L.
 Ed. 2d 638, 656 (2019)]. At the third step, the trial court
 “must determine whether the prosecutor’s proffered
 reasons are the actual reasons, or whether the proffered
 reasons are pretextual and the prosecutor instead
 exercised peremptory strikes on the basis of race.” Id. at
 [___, 204 L. Ed. 2d. at 656]. “The ultimate inquiry is
 whether the State was ‘motivated in substantial part by
 discriminatory intent.’ ” Id. (quoting Foster v. Chatman,
 ___ U.S. ___, 136 S. Ct. 1737, 1754, 193 L. Ed. 2d 1 (2016)).

Hobbs, 374 N.C. at 353, 841 S.E.2d at 499. It reiterated that the trial court is

“requir[ed] . . . to consider all of the evidence before it when determining whether to

sustain or overrule a Batson challenge.” Id. at 358, 841 S.E.2d at 502 (citations

 - 15 -
 STATE V. ALEXANDER

 Opinion of the Court

omitted) (emphasis added). Thus, “when a defendant presents evidence raising an

inference of discrimination, a trial court, and a reviewing appellate court, must

consider that evidence in determining whether the defendant has proved purposeful

discrimination in the State’s use of a peremptory challenge.” Id. at 356, 841 S.E.2d

at 501.

 In Hobbs, the trial court conducted a complete Batson analysis after the

defendant’s objections to several peremptory strikes by the State. Id. at 348, 841

S.E.2d at 496. In the course of his arguments, the defendant pointed to several

different factors demonstrating discrimination and indicating pretext in the State’s

explanation of its peremptory strikes, including a history of racial discrimination in

jury selection in the county. Id. Our Supreme Court held that the trial court erred

in denying the defendant’s Batson challenge because “the trial court did not explain

how it weighed the totality of the circumstances surrounding the prosecution’s use of

peremptory challenges, including the historical evidence that Mr. Hobbs brought to

the trial court’s attention.” Id. at 358, 841 S.E.2d at 502. Mr. Hobbs also argued at

trial and on appeal that his Batson claim was supported by a comparison between

white jurors who had been passed by the State and Black jurors who were

peremptorily challenged. Id. at 357, 841 S.E.2d at 502. Although the trial court

conclusively stated it “‘further considered’ Mr. Hobbs’s arguments in that regard[,]”

id., our Supreme Court held that the trial court erred in “failing to engage in a

 - 16 -
 STATE V. ALEXANDER

 Opinion of the Court

comparative juror analysis.” Id. at 360, 841 S.E.2d at 503. This error stemmed in

part from the fact that the Court “d[id] not know from the trial court’s ruling how or

whether these comparisons were evaluated.” Id. at 359, 841 S.E.2d at 502.

Considering these errors together, the Supreme Court held that “[t]he trial

court . . . failed to either conduct any meaningful comparative juror analysis or to

weigh any of the historical evidence of racial discrimination in jury selection

presented by Mr. Hobbs. This failure was erroneous and warrants reversal.” Id. at

359-60, 841 S.E.2d at 503. As a result, the Supreme Court remanded the matter to

the trial court to “conduct a new hearing on these claims.” Id. at 360, 841 S.E.2d at

503.

 Although the trial court did not have the benefit of Hobbs when it made its

ruling, that decision requires us to remand this case to the trial court to make the

findings necessary to resolve a Batson claim. Defendant offered several arguments

in support of his Batson challenge, including a contention that a comparative juror

analysis revealed racial bias in the State’s decision to strike Mr. Robinson on the

grounds of criminal history. As pointed out by Defendant, Mr. Robinson and a white

juror passed by the State had prior criminal charges that had been dismissed.4 Both

 4 Read in context, it appears from the transcript that both the State and Defendant agreed
that the white juror’s drug charges were resolved pursuant to N.C. Gen. Stat. § 90-96 (2019), which
provides a procedure for discharging and dismissing a drug charge without adjudication or conviction
under certain circumstances. N.C. Gen. Stat. § 90-96(a). While there is no similar outward agreement
on the exact disposition of Mr. Robinson’s child abuse charge in the record, the prosecutor described it

 - 17 -
 STATE V. ALEXANDER

 Opinion of the Court

parties acknowledged that, unlike Mr. Robinson, the white juror’s criminal history

involved drug charges, which, given Defendant was himself on trial for drug-related

offenses, Defendant contended made the prosecutor’s decisions all the more suspect.

However, we have no indication from the trial court as to “how or whether th[is]

comparison[] w[as] evaluated.” Id. at 359, 841 S.E.2d at 502. The trial court’s

acknowledgement that “Defendant . . . indicated . . . that another juror had previous

drug charges and that he was not excused,” coupled with its conclusion “taking into

account the various arguments presented [that] the Defendant has not proven

purposeful discrimination in the jury selection process,” sheds no more light on those

questions than the trial court’s conclusory statement in Hobbs that it had “ ‘further

considered’ Mr. Hobbs’s [comparative juror] arguments.” Id. at 357, 841 S.E.2d at

502.5

 We also hold that the trial court erred in failing to address Defendant’s

argument that the prosecutor’s comments about “tone of voice and those types of

as an “allegation” and did not challenge Defendant’s assertion that it had been deferred and/or
dismissed when attempting to distinguish Mr. Robinson from the purportedly similar white juror. The
trial court’s findings of fact similarly describe them as “child-abuse allegations” as opposed to a
conviction.
 5 The State argues that no comparative juror analysis was required because Mr. Robinson and

the white juror passed by the State were too dissimilar to allow for a meaningful comparison.
Defendant’s comparative juror analysis is, however, at least colorable: “Evidence about similar
answers between similarly situated white and nonwhite jurors is relevant to whether the prosecution’s
stated reasons for exercising a peremptory challenge are mere pretext for racial discrimination.
Potential jurors do not need to be identical in every regard for this to be true.” Hobbs, 374 N.C. at 359,
841 S.E.2d at 502-03 (citations omitted). As explained supra, we are unable to discern from its order
“how or whether” the trial court considered Defendant’s argument in its ultimate determination under
the totality of the circumstances. Id. at 359, 841 S.E.2d at 502.

 - 18 -
 STATE V. ALEXANDER

 Opinion of the Court

issues . . . go to racial stereotypes also.” While it is true that the trial court’s oral

ruling includes Mr. Robinson’s “answers and tone of voice” among the prosecutor’s

reasons for exercising the strike, the oral ruling did not mention Defendant’s specific

assertion that this reason suggested racial bias. We thus cannot discern how this

contention factored into the totality of the circumstances under consideration by the

trial court.

 To be sure, a juror’s demeanor and responses to questioning may be race-

neutral reasons for a peremptory challenge sufficient to satisfy the State’s burden at

the second step of Batson. See State v. Smith, 328 N.C. 99, 126, 400 S.E.2d 712, 727

(1991) (“[A] prospective juror’s nervousness or uncertainty in response to counsel’s

questions may be a proper basis for a peremptory challenge, absent defendant’s

showing that the reason given by the State is pretextual.”). But such reasons are not

immune from scrutiny or implicit bias. See Batson, 476 U.S. at 106, 90 L. Ed. 2d at

94 (Marshall, J., concurring) (“A prosecutor’s own conscious or unconscious racism

may lead him easily to . . . a characterization that would not have come to his mind

if a white juror had acted identically.”); Harris v. Hardy, 680 F.3d 942, 965 (7th Cir.

2012) (observing that “[d]emeanor-based explanations for a strike are particularly

susceptible to serving as pretexts for discrimination”).6 When a defendant asserts

 6The transcript shows that the prosecutor relied on Mr. Robinson’s “tone of voice” to justify an
assumption that Mr. Robinson had been fired from his last job. However, the prosecutor declined to
confirm this assumption by further questioning Mr. Robinson because his “tone of voice” also indicated

 - 19 -
 STATE V. ALEXANDER

 Opinion of the Court

that a facially race-neutral reason nonetheless suggests racial bias, a trial court must

consider that assertion under the totality of the circumstances. See Flowers, ___ U.S.

at ___, 204 L. Ed. 2d at 656 (“The trial court must consider the prosecutor’s race-

neutral explanations in light of all of the relevant facts and circumstances, and in

light of the arguments of the parties.”); Hobbs, 374 N.C. at 356, 841 S.E.2d at 501

(“[W]hen a defendant presents evidence raising an inference of discrimination, a trial

court, and a reviewing appellate court, must consider that evidence in determining

whether the defendant has proved purposeful discrimination in the State’s use of a

peremptory challenge.”).7 The trial court must resolve a Batson challenge through

“specific findings of fact.” Cofield, 129 N.C. App. at 275, 498 S.E.2d at 829 (citation

to the prosecutor that he would have been embarrassed to discuss it if asked. Though we do not know
how the prosecutor questioned other jurors, we agree with Defendant’s observation at oral argument
that the manner in which prosecutors approach the questioning of a juror may provide race-neutral
cover for a biased strike. Cf. Flowers, ___ U.S. at ___, 204 L. Ed. 2d at 660-61 (“[D]isparate questioning
and investigation of prospective jurors on the basis of race can arm a prosecutor with seemingly race-
neutral reasons to strike the prospective jurors of a particular race.” (citation omitted)). Just as
“[p]rosecutors can decline to seek what they do not want to find about white prospective jurors” to
frustrate comparative juror analyses, id. at ___, 204 L. Ed. 2d at 661, they can decline a full
examination of a Black juror to avoid answers that would foreclose a possible race-neutral rationale to
strike. A prosecutor’s “legitimate hunches” may be facially valid and satisfy the State’s burden at the
second step of Batson, Headen, 206 N.C. App. at 116, 697 S.E.2d at 413 (citation and quotation marks
omitted), but they are still subject to rebuttal and review under the totality of the circumstances at
the third step. See Flowers, ___ U.S. at ___, 204 L. Ed. 2d at 656 (“The trial court must consider the
prosecutor’s race-neutral explanations in light of all of the relevant facts and circumstances, and in
light of the arguments of the parties.”); Hobbs, 374 N.C. at 359, 841 S.E.2d at 503 (holding that this
Court “failed to weigh all the evidence put on by Mr. Hobbs, instead basing its conclusion on the fact
that the reasons articulated by the State have, in other cases, been accepted as race-neutral” (citation
omitted)).
 7 The totality of the circumstances in this case also includes the questionable assertion by the

prosecutor that Mr. Robinson “was just not a reasonable citizen” because he had been unemployed for
a year and did not know which university his wife was attending online. See, e.g., Miller-El v. Cockrell,
537 U.S. 322, 339, 154 L. Ed. 2d 931, 951 (2003) (observing that assessment of a prosecutor’s race-
neutral explanations turns in part on “how reasonable, or how improbable, the explanations are”).

 - 20 -
 STATE V. ALEXANDER

 Opinion of the Court

omitted). Without findings of fact regarding such a fact-specific issue, appellate

review is impossible. Id. In the absence of necessary findings by the trial court, we

must remand.

 This case differs materially from earlier cases in which we had no transcript of

the voir dire and upheld trial courts’ denial of Batson challenges without further

review. In Sanders, for example, the defendant offered no reviewable evidence or

argument in response to the State’s race-neutral reasons for its strikes, leaving this

Court no option but to “accept the State’s proffered reasons as rebutting the prima

facie case of discrimination.” 95 N.C. App. at 502, 383 S.E.2d at 414. Here, by

contrast, Defendant presented to the trial court a comparable juror analysis and cited

the prosecutor’s use of particular language in justifying his strike as specific evidence

to support Defendant’s Batson challenge.8

 We are unable to discern from the record how or whether the trial court

considered Defendant’s comparative juror argument and his contention that the

prosecutor’s concern about Mr. Robinson’s “tone of voice” evinced racial bias. Because

the trial court failed to enter findings regarding these issues, we are bound by Hobbs

 8 The trial court in Campbell resolved the Batson claim at the first stage of analysis, leading
us to distinguish Hobbs in part on that basis. ___ N.C. App. at ___ n.2, 846 S.E.2d at 808 n.2. This
case is markedly different, as it involves an order entered at the third stage of a Batson inquiry—after
the State conceded and the trial court found that the evidence established a prima facie Batson
challenge—that did not specifically address evidence and arguments necessary to resolve a claim at
that stage.

 - 21 -
 STATE V. ALEXANDER

 Opinion of the Court

to reverse its denial of Defendant’s Batson challenge. Hobbs, 374 N.C. at 358, 841

S.E.2d at 502. We remand the matter to the trial court for further specific findings.

Id. at 360, 841 S.E.2d at 504. On remand, the trial court may take additional evidence

in its discretion, but shall in any event make specific findings of fact under the totality

of all the circumstances at the third step of its Batson analysis, including, but not

limited to, findings: (1) disclosing how or whether a comparative juror analysis was

conducted; and (2) addressing Defendant’s assertion that the prosecutor’s statements

regarding Defendant’s answers and tone of voice evinced racial bias.

 In sum, our review of Defendant’s appeal is controlled by recent United States

and North Carolina Supreme Court decisions not available to the lower court at the

time of trial. Flowers, ___ U.S. ___, 204 L. Ed. 2d 638; Hobbs, 374 N.C. 345, 841

S.E.2d 492. The trial court can hardly be blamed for failing to follow guidance that

did not exist at the time of Defendant’s Batson challenge. But a high court’s decision

applying federal constitutional law to a criminal judgment controls cases pending on

appeal when that decision is announced. See Whorton v. Bockting, 549 U.S. 406, 416,

167 L. Ed. 2d 1, 11 (2007) (noting that decisions on constitutional law governing

criminal judgments apply to cases pending “on direct review” (citation omitted));

State v. Zuniga, 336 N.C. 508, 513, 444 S.E.2d 443, 446 (1994) (“[A]vert[ing] to . . .

federal retroactivity standards” in application of federal constitutional decisions

(citations omitted)).

 - 22 -
 STATE V. ALEXANDER

 Opinion of the Court

D. Assessment of Costs

 Defendant asserts the trial court’s assessment of costs in each of the four

judgments against him violates N.C. Gen. Stat. § 7A-304 as interpreted by State v.

Rieger, ___ N.C. App. ___, 833 S.E.2d 699 (2019), and the State “acknowledges”

Rieger’s interpretation of the statute. The statute provides for costs to be assessed

“[i]n every criminal case,” N.C. Gen. Stat. § 7A-304(a) (2019), and we have interpreted

a single “criminal case” to encompass “multiple criminal charges aris[ing] from the

same underlying event or transaction . . . adjudicated together in the same hearing

or trial[.] . . . In this situation, the trial court may assess costs only once, even if the

case involves multiple charges that result in multiple, separate judgments.” Rieger,

___ N.C. App. at ___, 833 S.E.2d at 703. We adopted the interpretation in Rieger

because “the intent of the General Assembly when it chose to require costs ‘in every

criminal case’ was to have those costs be proportional to the costs that this ‘criminal

case’ imposed on the court system.” Id.

 Here, the State moved to join all of Defendant’s charges for trial on the basis

that “the offenses are based on the same act or transaction or on a series of acts or

transactions connected together or constituting parts of a single scheme or plan.”

That order was granted by the trial court without objection from Defendant, and all

of the charges were heard in a single three-day trial. We see no difficulty in applying

the rationale and rule announced in Rieger to these procedural facts, and the State’s

 - 23 -
 STATE V. ALEXANDER

 Opinion of the Court

brief offers no substantive argument to support a deviation. As a result, we vacate

the trial court’s judgments so it may enter a new judgment in Case No. 17CRS050312

that assesses costs and new judgments in Case Nos. 17CRS050313-15 that do not.

 III. CONCLUSION

 We hold that in its ruling denying Defendant’s objection to the State’s

peremptory strike of Mr. Robinson, the trial court failed to satisfy the constitutional

requirements mandated by the North Carolina Supreme Court. On remand, the trial

court must make specific findings as to all the pertinent evidence and arguments,

including findings addressing Defendant’s comparative juror analysis and “tone of

voice” arguments. Once those findings are made, the trial court must “explain how

it weighed the totality of the circumstances surrounding the prosecution’s use of

peremptory challenges.” Hobbs, 374 N.C. at 358, 841 S.E.2d at 502. The trial court

may, in its discretion, undertake any evidentiary procedures it deems necessary to

comply with our mandate. Should it rule in Defendant’s favor on his Batson

challenge, Defendant shall receive a new trial. See State v. Wright, 189 N.C. App.

346, 354, 658 S.E.2d 60, 65 (2008) (granting a new trial on a Batson challenge).

 We also vacate Defendant’s judgments assessing costs inconsistent with

Rieger. Should the trial court again reject Defendant’s Batson claim, it shall enter a

new judgment in Case No. 17CRS050312 that assesses court costs and new

judgments in Case Nos. 17CRS050313-15 that do not.

 - 24 -
 STATE V. ALEXANDER

 Opinion of the Court

 REVERSED AND REMANDED IN PART; VACATED AND REMANDED IN

PART.

Judges BRYANT and HAMPSON concur.

 - 25 -